STATE of Missouri, Plaintiff–
Respondent,

v.

Gary L. DEASON, Defendant–
Appellant.

No. 28028.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 17, 2007.

Kent Denzel, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Victor Joseph Melenbrink, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Judge.

Gary Deason (Defendant) appeals from his conviction for second-degree sodomy. *See* § 566.064.[1] He contends that the trial court erred by denying Defendant's request for a continuance and by admitting certain evidence offered by the State during rebuttal. This Court affirms.

## I. Factual and Procedural Background

Defendant does not challenge the sufficiency of the evidence to sustain his conviction. This Court considers the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict. *State v. Woodmansee,* 203 S.W.3d 287, 289 (Mo.App.2006); *State v. Dillard,* 158 S.W.3d 291, 294 (Mo.App.2005). All contrary evidence and inferences are disregarded. *State v. Lawrence,* 64 S.W.3d 346, 348–49 (Mo.App.2002). Viewed from that perspective, the favorable evidence and inferences supporting the State's case against Defendant are summarized below.

In 2004, Defendant was married to Tamra Deason (Mother). The couple resided in a home in Dallas County, Missouri, with their eight children. One of them was M.D. (Victim), who was then 15 years old. Mother worked the night shift at a Village Inn restaurant in Springfield, Missouri. Defendant was not employed and took care of the kids.

Barbara Baczek (Baczek) worked part-time at Village Inn in October 2004 and

---

1. All references to statutes are to RSMo (2000).

became friends with Mother. During their conversations, they learned that each of their husbands were suffering from erectile dysfunction (ED). Baczek also worked at a doctor's office and had obtained samples of prescription medications used to treat ED such as Levitra, Cialis or Viagra for her husband. When Defendant found out about this, he asked Mother to get him some of the samples from Baczek. She gave the samples to Mother, who in turn gave them to Defendant in October and November of 2004. Mother never observed Defendant using any of the samples when they engaged in intercourse.

During that same time period, Defendant had a conversation with Victim about some medicine he had received from his doctor. Defendant needed to test it with another person and then write a report to the doctor. Defendant said he needed Victim's help because Mother had refused to participate in the test. Defendant told Victim that she would not be permitted to engage in various activities, such as going to cheerleading or to a friend's house, unless she agreed to assist Defendant with the "medicine test." The first time Defendant asked Victim to perform the medicine test, she declined. Thereafter, Defendant asked Victim to perform the medicine test again when she wanted to go to a friend's house. Because Defendant would not let Victim go unless she performed the test, she complied with his request.

To perform the medicine test, Defendant would disrobe below the waist. Victim would remove her pants and underwear, lie on her back with her legs up and permit Defendant to place his penis on Victim's vagina for approximately ten minutes. During these tests, Defendant also sometimes attempted to kiss Victim on the lips and touch her breasts. On one occasion, Defendant inserted his finger into Victim's vagina before performing the test. During the month of December 2004, Defendant performed the medicine test on Victim four times. The last incident occurred around December 22, 2004. Defendant would not let Victim attend her boyfriend's birthday party unless she performed the test. Initially, Victim did not report what was happening. She was afraid that Mother would not believe her and would think the incidents were Victim's fault.

On November 28, 2005, Victim became involved in an argument with her older brother, Arthur Deason (Arthur).[2] Defendant became involved in the argument and told Victim "if she didn't shut up and quit screaming that he was going to tell her secret." Defendant knew that Victim was secretly dating a boy against Mother's wishes and was pregnant with his child. Victim responded by saying, "[w]hat secret? My secret? Let's talk about your secrets. I'm going to tell mom your secret." Upon hearing this, Defendant appeared "panicked" and told Victim to "[s]hut up right now," and that "[y]ou're not going to tell your mom nothing." Victim began crying and told Mother that Defendant had "been making her do sex stuff with him." Defendant threatened to take the children to Texas or give them to the State if Mother reported the abuse. Defendant called his son from a previous marriage and asked him to talk Mother out of doing anything. The son, however, told Mother to "take [Victim] to the sheriff and put a stop to it." As Mother attempted to leave, she "had to physically fight [Defendant] off." Defendant then took the keys and locked the car. After a 911 call was made to the Dallas County Sheriff's Office, however, Defendant allowed Moth-

---

**2.** Because Arthur and Defendant share the same surname and Arthur was identified by his first name at trial, we will continue to do so on appeal.

er and Victim to leave. When Victim arrived at the sheriff's office, she told a deputy sheriff about being sexually abused by Defendant.

In February 2006, Defendant was charged by information with three counts of sexual abuse and one count of second-degree sodomy involving Victim. *See* §§ 566.100, 566.064. On the day of trial, the State filed an amended information which charged only a single count of second-degree sodomy. The three counts of sexual abuse were dismissed. Following a jury trial, Defendant was convicted of second-degree sodomy. He was sentenced to serve seven years in prison and fined $5,000. Additional facts necessary to the disposition of the case are included below as we address Defendant's three points on appeal.

## II. Discussion and Decision

In Defendant's first point, he contends the trial court abused its discretion by denying Defendant's motion for a continuance after the State filed an amended information on the first day of trial. The following facts are relevant to the discussion of this point.

On the morning of trial, the State requested leave to file a first amended felony information. The amended information only charged Defendant with committing second-degree sodomy, as originally alleged in Count III. Counts I, II and IV, which had charged Defendant with sexual abuse, were dismissed. Defense counsel moved for a continuance on the ground that the amendment to the information drastically altered Defendant's trial strategy. According to defense counsel, the allegations relating to the dismissed charges were part of a continuous course of conduct reported by Victim. Counsel had

hoped to exploit certain perceived inconsistencies in Victim's testimony regarding the prior allegations and considered this potential impeachment to be of paramount importance to the defense. Because of the dismissal of the sexual abuse charges, however, Defendant and his counsel had to decide whether the proposed impeachment was sufficiently valuable to outweigh the introduction of prior uncharged misconduct by Defendant that such a tactic would entail. Counsel requested a continuance to decide this issue of trial strategy. The prosecutor noted that, in light of the dismissal of the sexual abuse charges, the length of the trial would be shortened. She suggested that the trial be suspended after jury selection and that the parties begin presenting evidence the next morning, which would give Defendant and his counsel the rest of the day to decide what strategy to follow. The court granted the motion and decided to delay the presentation of evidence until the following morning.[3] Jury selection concluded at around noon, and the court stood in recess until 9:00 a.m. the next day.

The next morning, defense counsel renewed her motion for a continuance. She argued that a delay was necessary to conduct a "substantial investigation" of the events that occurred on November 28, 2005 by interviewing all of the children present in the home that evening. The court denied the request because: (1) the allegations in the amended information were identical to those contained in Count III of the original information which was filed in February 2006; (2) counsel could have conducted this type of investigation during the 196 days the case had been pending; (3) counsel conceded that she had been "prepared to try the overall

---

**3.** In earlier colloquy with counsel, the court had informed counsel that striking the July

setting would result in a four to six month delay in the trial.

case" before the amended information was filed; and (4) during the trial recess, defense counsel had taken no steps to contact any of these potential witnesses.

Because Defendant was only charged with committing one act of statutory sodomy, defense counsel also moved to exclude any testimony relating to the medicine tests that Defendant performed with Victim. The court denied that motion because it constituted "grooming evidence, which the courts have already ruled is admissible to show the progression of the molestation." At trial, the State elicited testimony from Victim concerning the medicine tests during her direct examination. Defense counsel then vigorously cross-examined Victim about allegedly inconsistent statements she had made regarding those incidents. In addition, defense counsel elicited evidence from the investigating officers and forensic interviewer concerning the alleged inconsistencies in Victim's account of events.

 "The decision to grant or deny a continuance is within the sound discretion of the trial court." *State v. Taylor*, 944 S.W.2d 925, 930 (Mo. banc 1997). "A court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Wolf*, 91 S.W.3d 636, 645 (Mo.App.2002). As the party seeking the continuance, Defendant bears the burden of demonstrating how he was prejudiced by the denial of his request. *State v. Artis*, 215 S.W.3d 327, 336 (Mo.App.2007); *State v. Downen*, 3 S.W.3d 434, 438 (Mo. App.1999). A trial court's ruling will not be disturbed by an appellate court absent a "very strong showing" of abuse and resulting prejudice. *State v. Edwards*, 116 S.W.3d 511, 535 (Mo. banc 2003); *State v. Lucas*, 218 S.W.3d 626, 629 (Mo.App.2007).

Defendant contends the trial court's denial of a continuance prejudiced his defense because, after the sexual abuse charges were dismissed, the time granted Defendant to reconsider his trial strategy was "wholly inadequate." We find this contention unpersuasive.

First, Defendant argues that the ruling prejudiced his defense because he was placed in a "predicament" of introducing his own prior bad acts to impeach Victim. In point of fact, it was the State that introduced Defendant's uncharged prior acts during its case-in-chief pursuant to a ruling Defendant has not challenged on appeal. Therefore, Defendant was not placed in the "predicament" he describes. More importantly, defense counsel vigorously cross-examined Victim regarding inconsistencies in her description of those prior events. Other evidence of these inconsistencies in Victim's statements was adduced through the testimony of the investigating officers and forensic interviewer. Defendant has failed to explain why the allotted time to reconsider his trial strategy was inadequate or how having additional time would have changed the way his defense was presented.

 Second, Defendant suggests that he should have been granted more time to investigate the second-degree sodomy charge. The trial court, however, determined that Defendant had ample time to conduct any such investigation during the 196 days the charge had been pending. "Inadequate preparation does not justify a continuance where counsel had ample opportunity to prepare." *State v. Taylor*, 944 S.W.2d 925, 930 (Mo. banc 1997). Furthermore, defense counsel conceded that she was prepared to defend against the statutory sodomy charge when it was included with the other charges. Therefore, Defendant could not have been prejudiced by the dismissal of the sexual abuse

charges. *See State v. Anding*, 689 S.W.2d 745, 757–58 (Mo.App.1985). Defendant's argument amounts to nothing more than unsupported, conclusory statements that he was prejudiced by the denial of his request for a continuance. *See State v. Oliver*, 775 S.W.2d 308, 312 (Mo.App.1989).

Given the facts before us, we cannot say the trial court abused its discretion by denying Defendant's request for an additional delay in the trial. Defendant has failed to make the "very strong showing" of abuse and resulting prejudice that is essential to obtaining relief on appeal. *Edwards*, 116 S.W.3d at 535. Point I is denied.

In Defendant's second point, he contends the trial court erred in admitting evidence during the State's rebuttal concerning Exhibit 3, which was a note written by Defendant. The following facts are relevant to the discussion of this point.

In February 2006, Defendant filed a written discovery request that asked the State to disclose "[a]ny written or recorded statements and the substance of any oral statements made by the defendant. . . ." In April 2006, the court entered an order requiring that all discovery be completed by June 30, 2006 at 5:00 p.m.

At some point prior to June 2006, both Defendant and Arthur were incarcerated in the Dallas County Jail. When Arthur was released, he started using a Ford pickup that belonged to Defendant and Mother. In mid-June 2006, Mother was looking for something in the pickup. She opened a notebook belonging to Arthur and found a paper towel with Defendant's handwriting on it. This note contained several statements, including one that said: "Medicine—taken, signs in dining room. Did you see [Mother] punch out a pill—what did she do with it. _____." Mother did not tell the prosecutor about discovering the note. Therefore, the State did not disclose the existence of the note by the June 30th deadline because the prosecutor was unaware of the document's existence at that time.

Trial commenced on July 24, 2006. During court that day, the prosecutor learned for the first time that Mother thought she had found a note that might be helpful. She was asked to bring the note to court the next day.

When Mother returned to court on the second day of trial, she inadvertently left it at home. During the State's case-in-chief, Mother testified that she gave the samples of Levitra and Cialis to Defendant at his request and that he did not use the medicines during intercourse with her. The State also introduced Exhibits 1 and 2, which were the remaining samples of Levitra and Cialis. Five pills were missing from the samples. The foregoing evidence tended to corroborate Victim's testimony that she participated in four medicine tests after initially refusing to do so on one occasion.

In an attempt to rebut this evidence, Arthur was called as a witness during Defendant's case-in-chief. Arthur testified that on November 28, 2005, he had observed Mother opening the packets of pills, throwing the pills in the trash, and then giving the empty packets to the officers as evidence that Defendant had taken the pills. On cross-examination, Arthur said that he told investigating officers about this incident when he was interviewed.

This was the first time the prosecutor became aware that Arthur claimed to have made such observations because his trial testimony was inconsistent with statements taken from him by three investigating officers. After Arthur testified, the prosecutor inquired about the note that Mother had mentioned. Because she had left the note at home, a deputy took her

home to retrieve the item. The prosecutor received the note for the first time at around 3:45 p.m.

In the meantime, Defendant had been testifying on his own behalf. During his cross-examination, the existence of the note was disclosed to defense counsel during a sidebar conference. The prosecutor stated that she had just received the note from Mother. The court asked the parties to approach again when the prosecutor was ready to use the note. At the second sidebar conference, defense counsel was shown the exhibit. The prosecutor then stated:

> [Mother] advised me yesterday that she had found some kind of a note, and I asked her to bring it in. She did not bring it this morning, and then when Arthur testified, I asked my paralegal to go out and see if—if she'd brought the note and just hadn't given it to me. She advised that it was at home, and we then asked the deputy to take her there to pick it up.
> And this is what she brought back. She would testify that she recognizes this as [Defendant's] handwriting, she found it in [Defendant's] vehicle that is now being used by Arthur. Arthur was in jail with the defendant for the—they were in jail at the same time for a while. And the officers will testify that this particular (indiscernible)—it's the hand towels used in the bathrooms at the jail.
>
> . . . .
>
> Judge, this wasn't something I intended to use and obviously didn't use until Arthur's testimony that—in claiming that his—he had seen his mother pop pills out of the packages, which we had never heard before. And then Arthur's credibility became an issue, and that's when we asked her to go ahead and—had a deputy go ahead and go out and get it.

Defense counsel objected to any use of the note because it was a statement by Defendant that had not been disclosed by the June 30th discovery deadline. The court ruled that Defendant could not be cross-examined about the note, but the State could try to introduce it through Mother's testimony in rebuttal.

During the State's rebuttal, Mother was called as a witness. When the prosecutor sought to question Mother about the note, defense counsel objected on the ground that the note had not been disclosed in compliance with the court's discovery order. She asked that the evidence be excluded. The court took a 15–minute recess to allow Defendant time to examine the note and to allow the court and attorneys to question Mother about it. During this examination, Mother identified the note, explained the circumstances of its discovery and confirmed that it was written in Defendant's handwriting. Mother had not mentioned the note to the prosecutor until the afternoon of the first day of trial and had only provided the note to prosecution 45 minutes earlier. After finding that the prosecutor had disclosed the note as soon as she possibly could, the court overruled Defendant's objection. Mother was permitted to testify about discovering the note, and it was admitted in evidence as Exhibit 3. Deputies Heidler, Fields and Rice, who interviewed Arthur, testified that he never said anything to them about seeing Mother remove any Levitra or Cialis pills from their packaging. Deputy Rice also testified that Arthur admitted lying about a purported threat made against him by Victim and that Exhibit 3 appeared to look similar to paper towels used at the Dallas County Jail.

During surrebuttal, Defendant testified on his own behalf. He admitted writing Exhibit 3, but denied that he had done so

while in jail. Instead, he said the note was written at a fast-food restaurant in December 2005. He was simply making notes to himself. He made the note about "medicine" because Arthur had already told Defendant about seeing Mother remove the pills from the sample packets. Defendant was reminding himself to ask Arthur what happened to the missing tablets.

■ Citing Rule 25.03(A), Defendant contends the trial court erred in admitting evidence about the note during the State's rebuttal.[4] This rule provides that, upon a defendant's written request, the State must disclose such material and information within its possession or control designated in said request, including any "written or recorded statements and the substance of any oral statements made by the defendant...." Rule 25.03(A)(2). If a party fails to comply with a discovery order, "the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." Rule 25.18. Discovery sanctions are not mandatory; the trial court is granted considerable discretion in determining whether to impose a sanction and, if so, what sanction to impose pursuant to this rule. *See State v. Whitfield*, 837 S.W.2d 503, 507 (Mo. banc 1992); *State v. Rippee*, 118 S.W.3d 682, 684–85 (Mo.App.2003). The standard for reviewing a claim that defendant was denied meaningful discovery is whether the trial court abused its discretion in such a way as to result in fundamental unfairness. *State v. Tisius*, 92 S.W.3d 751, 762 (Mo. banc 2002); *State v. Artis*, 215 S.W.3d 327, 337 (Mo.App.2007). "Fundamental unfairness occurs when the state's failure to disclose results in defendant's genuine surprise and the surprise pre-

vents meaningful efforts to consider and prepare a strategy for addressing the evidence." *State v. Taylor*, 134 S.W.3d 21, 26 (Mo. banc 2004); *Artis*, 215 S.W.3d at 337.

■ Defendant argues that the State violated Rule 25.03(A)(2) by failing to timely disclose the note and that, by admitting Exhibit 3 and related testimony the trial court abused its discretion in such a way as to result in fundamental unfairness. This Court disagrees.

First, the prosecutor obtained possession of the note late on the second day of trial after the State had rested its case. Defendant was told about the note within 45 minutes after Mother brought it to court. The trial judge made a specific finding that the prosecutor disclosed the note as soon as she possibly could. Rule 25.03 imposes no obligation on the State to disclose evidence that it does not possess. *State v. Johnston*, 957 S.W.2d 734, 748 (Mo. banc 1997); *State v. Stewart*, 18 S.W.3d 75, 92 (Mo.App.2000).

■ Second, assuming *arguendo* that the admission of the challenged evidence was error, the trial court's denial of a requested sanction constitutes an abuse of discretion only if the admission of such evidence resulted in fundamental unfairness to Defendant. *State v. Robinson*, 832 S.W.2d 941, 945 (Mo.App.1992). "Fundamental unfairness is determined by whether discovery of the evidence would have affected the outcome of the trial." *State v. Merrick*, 677 S.W.2d 339, 343 (Mo.App. 1984). If the note had been timely disclosed, Defendant argues that he "could have asked Arthur if he had told the police at the time that he saw his mother throw some pills away" instead of allowing that topic to be broached on cross-examination.

**4.** All references to rules are to Missouri Court Rules (2007).

We fail to see how this single change in the evidence would have affected the outcome of the trial. When Arthur was asked that question on cross-examination, he testified that he did report the incident to investigating officers during his interviews. Whether that testimony was adduced on direct or cross-examination, it was still subject to contradiction by the State through the testimony of Deputies Heidler, Fields and Rice. Moreover, Defendant was able to effectively address the note during his surrebuttal testimony. He offered his own explanation of when and why the note was created, and the ambiguous language in the note could be interpreted in a way that was consistent with Defendant's testimony. "Where counsel is surprised by opposing evidence at trial, but deals with the evidence in precisely the same manner as if he had been fully prepared, there is no surprise and there is no effect on the trial." *State v. Carlisle*, 995 S.W.2d 518, 521 (Mo.App.1999). Because the trial court's decision to deny the sanction requested by Defendant did not result in fundamental unfairness to him, that ruling will not be disturbed on appeal. *State v. Destefano*, 211 S.W.3d 173, 181 (Mo.App. 2007). Point II is denied.

■ In Defendant's third point, he contends the trial court erred by admitting other statements of Defendant during Mother's rebuttal testimony that were not disclosed pursuant to the court's discovery order. Defendant did not make that objection at trial when the evidence was presented. Defendant seeks plain error review under Rule 30.20 and argues that the court should have excluded this evidence *sua sponte* because it was not timely disclosed. The following facts are relevant to the discussion of this point.

As of noon on July 24, 2006, the trial was in recess to give Defendant additional time to make a trial strategy decision. Later that afternoon, the prosecutor was given a file relating to an on-going investigation of Defendant for tampering with a witness. The file included a statement from Mother obtained by the sheriff's department on June 13, 2006. That statement contained references to certain comments Defendant made to Mother in May 2006 during a telephone call from jail. Defendant told Mother that she needed to get Victim "straightened out" and get Victim's "story straight." Defendant also suggested that, if Victim testified against him, he would "show her for the stupid, lying, little slut that she is" and that "she would be destroyed on the stand." Lastly, Defendant said he would subpoena Baczek and "offer evidence that would destroy her, both professionally and personally." The prosecutor disclosed these statements to defense counsel by fax at 4:24 p.m. after receiving the file.

During Defendant's cross-examination, he was questioned about these statements. He admitted calling Mother from jail, but he denied making any of the comments attributed to him. During the State's rebuttal, Mother testified that Defendant made each of the aforementioned statements to her during the phone call. Defendant did not object on the ground of late disclosure. On appeal, Defendant cites Rule 25.03(A) and argues that the admission of Mother's testimony constituted plain error.

■ Rule 30.20 authorizes an appellate court the discretionary authority to review for plain error that affects a defendant's substantial rights "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.*; *State v. Carney*, 195 S.W.3d 567, 570 (Mo. App.2006). "This is a benchmark higher than that required for a showing of mere prejudice." *State v. Tripp*, 168 S.W.3d 667, 671 (Mo.App.2005). "Plain error review is utilized sparingly, and a defendant seeking such review bears the burden of

showing that plain error has occurred." *State v. Lloyd,* 205 S.W.3d 893, 907 (Mo. App.2006). A miscarriage of justice or manifest injustice arises from the improper admission of evidence when that evidence "had a decisive effect on the jury's verdict." *State v. Malone,* 951 S.W.2d 725, 730 (Mo.App.1997); *Lloyd,* 205 S.W.3d at 907.

Defendant has failed to carry his burden of explaining how the admission of these statements had a decisive effect on the jury's verdict. During his testimony, he denied making the statements. Even if the jury disbelieved that testimony, however, there was nothing overtly incriminating in what was said. To the contrary, the overall tenor of the statements was exculpatory because they suggested Victim and Baczek were lying about what had happened and their lies would be exposed if they testified.[5] Thus, the case at bar is markedly different from *State v. Scott,* 943 S.W.2d 730 (Mo.App.1997), upon which Defendant relies. *Scott* does not involve plain error because a timely objection at trial had preserved the issue for review. *Id.* at 734. More importantly, the undisclosed statements in *Scott* that required reversal "amounted to admissions of guilt" to the charges made against the defendant. *Id.* at 736. Therefore, Defendant's reliance on *Scott* is misplaced. After reviewing the record, we cannot say admission of the challenged statements had a decisive effect on the jury's verdict. Point III is denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SCOTT, J., concur.

---

5. The threat to subpoena Baczek and call her as a witness in Defendant's own case supports the inference that he had nothing to fear from her testimony.