

*In the*

*Missouri Court of Appeals*

*Western District*

| | |
|---|---|
| **STATE OF MISSOURI,** | |
| **Respondent,** | **WD75627** |
| **v.** | **OPINION FILED:** |
| **JOSE F. FLORES,** | **May 13, 2014** |
| **Appellant.** | |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Larry D. Harman, Judge**

**Before Division Four: James Edward Welsh, C.J.,**
**Lisa White Hardwick, J., and Gerald D. McBeth, Sp. J.**

Jose F. Flores appeals the circuit court's judgment convicting him, following a jury trial, of first-degree statutory sodomy, first-degree child molestation, and first-degree statutory rape. Flores raises seven claims of circuit court error on appeal. We affirm the judgment.

**Background**

Flores was charged with ten counts of first-degree statutory sodomy (§ 566.062, RSMo 2000[1]), six counts of first-degree child molestation (§ 566.067), and one count of first-degree statutory rape (§ 566.032). The State alleged that between January 1, 2005, and April 4, 2006, Flores and his girlfriend ("Mother") had sexually abused Mother's two daughters, K.J. and C.J.,

---

[1]Statutory references are to the Revised Statutes of Missouri 2000, except where otherwise noted.

who were around ages eight and six at the time.[2]  Flores's jury trial was conducted over five days in July 2012.[3]

The evidence presented at trial revealed that during the time period charged, K.J. and C.J. lived with Mother and her mother ("Grandmother") at a house in Saline County.  Flores, who was romantically involved with Mother, also stayed at the house during this time period.  The State's involvement with the children began on March 29, 2006, when Misty Allen, an investigator with the Saline County Children's Division, received a "hotline" call reporting that C.J. had been physically abused by Mother.  C.J. and K.J. were removed from the home on April 4, 2006.  The girls eventually were placed in the foster home of Joe and Patricia.[4]

The girls' caseworker, Stephanie Dierker, scheduled the first visit between the children and their mother for June 7th at the Children's Division office.  After that meeting, both girls became extremely upset and afraid upon learning that Flores, who had driven Mother to the visit, was on the premises.  When the girls met with their therapist, Ellen Walls, over a week later, she found that the presence of Flores at their visit with Mother was still on the girls' minds.  C.J. told Walls that she had nightmares about a man coming into her room.

Later that day, C.J. disclosed to her foster mother, Patricia, that Flores and Mother had put handcuffs on them, taken them either to the bedroom or the "cold room,"[5] and had touched their private parts.  K.J. confirmed her sister's account.  K.J. told Patricia that C.J. bled from her

---

[2]K.J., the older daughter, was born in January 1998.  C.J. was born in January  2000.

[3]The State charged Mother with the same seventeen counts and moved for joinder of the defendants.  The circuit court ultimately granted Mother's motion to sever her trial, and the two were tried separately.

[4]We refer to the foster parents by their first names in order to protect the children's privacy.  No disrespect or suggestion of familiarity is intended.

[5]It was later determined that the "cold room" referred to a back room in the house that did not have heat.

front private after being touched there. The girls told Patricia that Flores would take each of them in handcuffs out to a shed. Both girls also told Patricia about an incident when Flores and Mother came into the bathroom, took K.J. out of the tub, and began touching her all over. Later that weekend, K.J. pointed out the breast, vaginal area, and buttocks on a doll as the places where they were being touched and kissed. The girls told Patricia that Flores and Mother threatened to hurt them and to send Grandmother to jail if they told anyone about what had happened.

The next day, the Children's Division received a hotline call reporting the children's disclosure of sexual abuse. When Investigator Allen learned of the new hotline report, she contacted the police. Allen arranged for a forensic interview of the girls at the ChildSafe child advocacy center and a Sexual Assault Forensic Exam ("SAFE" exam).

Both girls were interviewed at ChildSafe by Maria Mittlehauser. Those videotaped interviews were admitted into evidence and played for the jury. Both girls demonstrated to Mittlehauser how they had been handcuffed. C.J. indicated that she had been handcuffed above her head and hung on the wall and could not reach the floor. K.J. said that the first time she was touched on her private areas was when she was lying on the bed in Mother's bedroom. She also described being touched in the cold room and in the bathroom. She pointed to her vaginal area to show where she had been touched by Mother and Flores. She stated that on one occasion when she was standing in the shower and C.J. was in the bathtub, Flores and Mother shut off the water and touched both girls in their private areas. C.J. discussed being touched in the bedroom, bathroom, and cold room. C.J. pointed to the vaginal area and breast area on a drawing to show where both she and K.J. had been touched by Mother and Flores. C.J. described an incident when Flores and Mother took her and K.J. from their bedroom into Mother's bedroom, cuffed them to hooks on the wall, and touched them "everywhere."

3

A few days later, Walls and Dierker went to the foster home and spoke with each girl separately. C.J. told Dierker that Flores and Mother had touched her lower privates in both the front and the back. C.J. said that she was touched with something that looked like a hand and was the same color as a hand but was not a hand. She said that it was soft and then got hard. K.J. talked about Flores and Mother separating her and C.J. and handcuffing them. She described being touched by Flores and Mother while she was chained to a wall. K.J. again related the incident when Flores and Mother took both girls out of the bathtub and touched their private parts. She also described an incident where she was lying on her stomach on the bed while Flores and Mother touched her "hiney."

When Police Detective Todd Reeter met with the girls, he showed K.J. photographs of the house where the alleged abuse occurred. K.J. identified the back porch as the "cold room," and she identified the photograph of her mother's bedroom where she had been handcuffed. Reeter showed K.J. a website that displayed various styles of handcuffs. K.J. identified a pair as similar to the ones Mother and Flores had used on her. K.J. also identified a clasp as similar to one Mother and Flores used to attach the handcuffs to a type of coat hook in the wall. As K.J. and the detective were talking, C.J. demonstrated to Investigator Allen how she and K.J. had been handcuffed by lying on the floor and putting her wrists to her ankles.

By the time the police searched the house, the family no longer lived there. An officer testified that the wall inside the master bedroom closet had a large metal hook in it. The new resident told the officer that she had not removed anything from or put anything in the walls. The officer testified that the back porch had no heating or air conditioning and that the windows were covered. The officer also testified that there was a shed located in back of the house.

4

Nurse Practitioner Lachelle Williams performed the SAFE exams on both girls. Patricia testified that K.J. was very quiet during the examination and seemed to be disassociating herself from what was happening. C.J. screamed uncontrollably during her examination and begged for it to stop. The nurse was unable to perform a rectal examination due to C.J.'s resistance. Nurse Williams testified that K.J.'s exam showed an attenuation, or thinning, on the right side of her hymen, but she could not pinpoint the cause of the thinning nor conclude that it was abnormal. C.J.'s exam showed an absence of hymen in some areas, which indicated that she had suffered a penetrating trauma to her vaginal area.

The girls' testimony at trial was presented via videotaped deposition. At the time of the depositions, K.J. was nine years old and C.J. was seven. K.J. testified that Flores and Mother touched her in her private places on multiple occasions. She identified her private places on an anatomical drawing by circling the vaginal area, buttocks, and chest. The first touching occurred in the back room of the house, which K.J. called the "cold room." Flores and Mother touched all three private areas with their hands, both over and underneath her clothes. Flores removed K.J.'s blue jeans, but not her panties. K.J. testified that the second incident of touching occurred that same day in Mother's bedroom. After Mother removed K.J.'s clothes, she and Flores handcuffed K.J.'s hands and feet and hung her by the handcuffs on the wall. Flores and Mother then touched K.J. in all three of her private places. In another incident, K.J. and C.J. were taking a shower when Flores and Mother came into the bathroom. Flores and Mother took both girls to the cold room where they touched both girls in all three of their private places.

C.J. testified that the first time Flores and Mother touched her occurred by the bed in Mother's bedroom. C.J. said that Mother took C.J.'s shirt and pants off and that Mother and Flores touched her front privates. She pointed to her vaginal area to show where she had been

5

touched.  On another occasion, Flores and Mother touched C.J. on her front "privacies" and on her "butt."  She again pointed to her vaginal area to indicate what she meant by "privacies."  C.J. said that she saw both Flores and Mother touch K.J. on her front private area and on her "boobs" and saw Flores touch K.J.'s "butt."  C.J. testified that Flores put handcuffs on her and K.J. and touched both of them.  She said that they were hung from a hook inside the closet of Mother's bedroom.  C.J. also said that she was taken to a shed where Mother touched her front privacies and her boobs, while Flores touched K.J.

Flores testified in his own defense.  He denied physically or sexually abusing the girls or threatening them.  Grandmother testified that she never saw Flores or Mother abuse the girls.

The jury found Flores guilty on all seventeen counts.  Flores waived jury sentencing prior to trial.  The circuit court sentenced him to life imprisonment on each count of statutory sodomy (counts 1-10), fifteen years' imprisonment on each count of child molestation (counts 11-16), and life imprisonment for statutory rape (count 17).  The first two life sentences for statutory sodomy, the life sentence for statutory rape, and the first two child molestation sentences were ordered to run consecutively to the others, which were to run concurrently, resulting in a total of three consecutive life sentences plus thirty years.

**Discussion**

In Points I and II, Flores argues that the circuit court erred in permitting the various witnesses to testify about out-of-court statements that K.J. and C.J. made in 2006 and in admitting the girls' 2007 videotaped depositions as their trial testimony without conducting a hearing, pursuant to sections 491.075 and 491.680, to determine whether significant emotional or psychological trauma would result from requiring the children to testify in person at the 2012 trial.  He contends that the court's failure to determine whether the children were currently

6

"legally unavailable" to testify violated his constitutional right to confront his accusers. *See* U.S. CONST., amends. VI and XIV; MO. CONST., art. I, § 18(a).

Section 491.075.1 provides, in pertinent part, that "[a] statement made by a child under the age of fourteen relating to an offense under chapter [566], performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings . . . as substantive evidence to prove the truth of the matter asserted if:"

> (1) The court finds, in a hearing conducted outside the presence of the jury[,] that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

> (2). . . . (c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

§ 491.075.1, RSMo Cum. Supp. 2011.

Pursuant to section 491.680.1, "[i]n any criminal prosecution under the provisions of chapter [566] involving an alleged child victim, upon the motion of the prosecuting attorney, the court may order that an in-camera videotaped deposition of the testimony of the alleged child victim be made for use as substantive evidence at preliminary hearings and at trial." The statute requires the circuit court to find, "at a hearing, that significant emotional and psychological trauma to the child which would result from testifying in the personal presence of the defendant exists, which makes the child unavailable as a witness at the time of the preliminary hearing or trial." § 491.680.2. If the court so finds, it "shall order that an in-camera videotaped deposition of the testimony of the alleged child victim be made for use as substantive evidence" at both the preliminary hearing and at trial. *Id.* The statute also provides that the attorney for the defendant

7

"shall have at least two opportunities to cross-examine the deposed alleged child victim: once prior to the preliminary hearing and at least one additional time prior to the trial." § 491.680.5.

Flores was originally indicted in May 2006 based on the same allegations that he and Mother had sexually abused K.J. and C.J. Prior to Flores's and Mother's joint trial in 2007, the court held a hearing on the State's motion to admit the girls' out-of-court statements pursuant to section 491.075 and its motion to order video recordings of the victims' depositions and to exclude the defendants. *See* §§ 491.680 and 491.685. The court heard testimony from the girls' therapist Ellen Walls, a licensed clinical social worker.[6] *See State v. Naucke*, 829 S.W.2d 445, 449-50 (Mo. banc 1992) (finding testimony of a social worker sufficient to support trial court's finding of unavailability). Walls testified that it was her opinion that the girls would suffer significant emotional or psychological trauma if called to testify in Flores's presence. Walls said that the physical presence of Flores would be so terrifying for the girls that they would struggle and be set back in therapy. She also stated that the girls would not be able to communicate effectively in the physical presence of Flores.

The circuit court found that significant emotional or psychological trauma would occur to C.J. and K.J. if they were required to testify in Flores's presence. Consequently, the court ordered that the girls' prior out-of-court statements would be admissible as substantive evidence and that their trial testimony would be presented via video deposition. The court presided over the depositions, and Flores's attorney was permitted to cross-examine the children. Although the

---

[6]Walls told the court about the girls' reactions at their first visit with their mother when they learned that Flores was in the building. Walls said that K.J. began to visibly tremble and became tearful and that she made employees who worked at the building check to make sure that Flores had left the building and the parking lot. It took an hour to calm K.J. so that she could leave the building. Walls testified that K.J. had nightmares on a regular basis that often involved Flores hurting her and C.J. Walls stated that C.J. had expressed the same fears of Flores and also had nightmares. Walls testified that the fears had continued throughout the course of the girls' therapy and that they had resurfaced as the date for the court hearings had gotten closer.

8

court ordered Flores excluded from the depositions, he was permitted to contemporaneously view them on closed circuit television and to consult with his attorney in accordance with the provisions of sections 491.680 and 491.685 (setting forth the procedural requirements when the defendant has been excluded from a child victim's deposition).

As noted, Flores and Mother were tried jointly in 2007. Both were convicted of two counts of first-degree statutory sodomy, and both subsequently had their convictions separately vacated. The State then jointly charged both Flores and Mother with seventeen counts in a superseding indictment in 2011, and the State sought to again try them together. Mother's motion to sever was granted on May 31, 2012, however, and the two were tried separately. Both were convicted on all seventeen counts.

Here, Flores makes no complaint about the circuit court's initial determination that the girls were legally unavailable to testify live at trial in 2007. His complaint is that five years later, at his 2012 trial, the court permitted the State to again introduce the children's out-of-court statements and their 2007 video depositions without conducting a new Chapter 491 hearing and making new findings as to whether the girls were legally unavailable at that time.

Specifically, Flores argues that under the plain language of both section 491.075.1(2)(c) and section 491.680.2, the court must find that the child would be significantly psychologically or emotionally traumatized and, therefore, legally unavailable "*at the time*" of the accused's trial. *See State v. Moore,* 303 S.W.3d 515, 520 (Mo. banc 2010) (in interpreting a statute, the primary goal is to give effect to legislative intent as reflected in the plain language used). Flores asserts that the plain and ordinary meaning of both statutes makes clear that a finding that a child is legally "unavailable" must be contemporaneous with the time of the accused's trial. He argues, citing *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004), and *State v. Schaal*, 806 S.W.2d 659

9

(Mo. banc 1991), that the confrontation clauses of both the federal and Missouri constitutions require a contemporaneous finding of unavailability as well. Flores contends that the circuit court's 2007 findings were "stale" by the time of the 2012 trial, citing *Searcy v. Searcy,* 38 S.W.3d 462, 471 (Mo. App. 2001), for the general proposition that the passage of time erodes the reliability of factual determinations because evidence becomes "stale."

Flores also contends that the prosecution was required by the applicable statutes to give the defense notice of its intent to use K.J.'s and C.J.'s earlier out-of-court statements in the 2012 trial but failed to do so. But the record in *State v. Celis-Garcia*, WD75582, 420 S.W.3d 723, 730-32 (Mo. App. W.D., February 25, 2014), suggests otherwise. This court recently affirmed Mother's 2012 convictions in that case. There, the defense filed a motion to reconsider the admissibility of the children's video depositions and out-of-court statements, which the court denied following a pre-trial hearing. *See id.* The record in that case shows[7] that the court received testimony from the children's current counselor about the children's current ability to

---

[7]"A court may take judicial notice of its own records and may take judicial notice of the records of other cases when justice so requires," *Vogt v. Emmons*, 158 S.W.3d 243, 247 (Mo. App. 2005), or where the cases are "so closely interwoven, or so clearly interdependent as to invoke a rule of judicial notice in one suit of the proceedings in another suit." *Knorp v. Thompson*, 175 S.W.2d 889, 894 (Mo. 1943) (citations and internal quotation marks omitted); *see also Hall v. Podleski*, 355 S.W.3d 570, 579 n. 12 (Mo. App. 2011); *State v. Weber*, 814 S.W.2d 298, 303–04 (Mo. App. 1991) (trial court properly took judicial notice, in criminal prosecution for burglary, of the file of a protective order case involving the defendant and the victim). This is a prime example of cases that are "closely interwoven" and "clearly interdependent" as to this specific issue. Moreover, the record of Mother's case is "physically before the court and capable of being examined for reliability, trustworthiness, and genuineness." *See State v. Johnson*, 150 S.W.3d 132, 137 (Mo. App. 2004).

testify live at trial. Based on that hearing, the court concluded that the children were currently

legally unavailable to testify in the presence of ***either Mother or Flores***.[8]

The record from Flores's case indicates that his counsel was aware not only that the State

intended to use the children's out-of-court statements at his trial, but also that the court had made

a recent ruling on the matter of the children's current legal availability.[9] At trial, when Flores's

counsel objected to the children's out-of court statements and deposition testimony, the judge

(the same judge who presided over the defendants' 2007 joint trial and over each of the

defendants' 2012 trials) referred to the recent 491 hearing in Mother's case in overruling those

objections. Defense counsel first objected on the basis of "hearsay" in the midst of Children's

Division investigator Misty Allen's testimony about the girls' out-of-court statements. Defense

counsel stated: "I know the court's already ruled that the hearsay is admissible." But he stated

that he needed, for appellate purposes, to object to testimony about any of the children's out-of-

court statements and asked for a "running" objection. The court responded that "the court's

---

[8]On June 12, 2012, at a pre-trial hearing a few days before Mother's trial, the circuit court held a hearing on the matter of the children's legal availability to testify live at trial as a result of Mother's motion for reconsideration of the 2007 order to permit their videotaped depositions and other out-of-court statements to be used at trial. The court received testimony from a licensed clinical social worker and family therapist, who had been counseling the girls since early 2010. She opined that testifying live at trial would likely cause a "retraumatization" which could be life-long and very difficult to treat. She stated that the girls "are concerned about both [Mother and Flores]" and that "[t]he confrontation and seeing either one of them under any circumstances would be traumatic for them."
    The court found that the evidence was reliable and that the children were legally unavailable to testify. The court stated: "[On] today's date, we received additional evidence ***from the current counselor of the children***, who has maintained that requiring these children to testify ***in the presence of either defendant***, although these trials are now severed, that without equivocation and without really any contradiction, with respect to both [girls] that significant emotional or psychological stress and trauma would, in fact, be extremely traumatic for the witnesses." (Emphasis added.) The court noted that the counselor had testified about the children's current status. The court also found "that the time, content, and circumstances of the statements by these two children, and the information provided to the court by testimony and statements of counsel, did provide sufficient indicia of the reliability of the statements. I've made that finding earlier, and I make it again." The court denied Mother's motion to reconsider.

[9]At Flores's July 3, 2012 pre-trial hearing, for example, defense counsel stated that he had filed a motion concerning a redaction to C.J.'s videotaped deposition and that, because the motion was identical to one filed by Mother's attorney (in her 2012 case), he assumed the court would rule in the same way. This shows not only that counsel was aware that the videotaped depositions were going to be admitted at trial, but also shows his awareness of at least some of the court's rulings in Mother's case.

11

ruling with respect to the statements of the children made to others . . . remains the same. So, this objection, I think, is overruled."[10]

Later, when the State sought to introduce the victims' video depositions, defense counsel stated: "I know you've already made a ruling on this, but at this point I think, for later purposes, I'd object to their videotaped testimony in lieu of them being here live, especially considering [that] the oldest girl is fourteen." The prosecutor responded: "Based upon the court's previous findings, and *the previous hearing held in this matter with the girls' current counselor*, that . . . both [C.J.] and [K.J.] are unavailable, I would ask the court on this basis to reaffirm those findings." (Emphasis added.) Evidently aware of the hearing to which the prosecutor referred, defense counsel made no reply. The court held: "The objection is overruled, and the court will not repeat at this time the specific factual findings and legal conclusions reached earlier, *unless you choose to have me do that*." (Emphasis added.) Defense counsel declined that offer, and the court continued: "Okay. It's all part of the record. *We've actually had a couple of hearings on that, and the court has found that under Chapter 491, that the children are, in fact, unavailable*." (Emphasis added.) The court further noted, with regard to the depositions, that the 491 procedures "were followed explicitly, and the defendant was present during the depositions and represented by counsel [and] had the opportunity for cross-examination." The video depositions were then played for the jury.

The transcript shows that, in overruling Flores's objections, the court was referring to and relying on its findings of unavailability based on the pre-trial hearing in Mother's case at which "the girls' current counselor" testified. It also indicates that Flores was aware of those findings.

_____

[10]The parties disagree as to whether the record shows that the court granted a continuing objection, but it is irrelevant because the "hearsay" objection did not preserve the claim now raised on appeal.

12

Although the transcript shows that Flores was aware, prior to his trial, that the court had determined that the girls' out-of-court statements and video depositions would be admissible at his 2012 trial, nothing in the record indicates that Flores filed a motion to reconsider the use of that evidence at his trial. Nor did he pursue a section 491.687 motion under which he could have sought a videotaped re-examination upon a showing of good cause. *See State v. Uelentrup*, 910 S.W.2d 718, 721-22 (Mo. App. 1995).

Flores's theory on appeal is that the circuit court erred in admitting testimony about the victims' out-of-court statements without holding a hearing to determine if the girls were legally unavailable to testify at the time of the 2012 trial. That objection was never made to the trial court. The transcript shows that Flores objected to the girls' out-of-court statements on the basis of "hearsay" and that he objected to their videotaped depositions on the basis that "the oldest girl is fourteen." "To preserve a claim of error in the taking of evidence, an accused must object with sufficient specificity to apprise the [circuit] court of the grounds for the objection." *State v. Gaines*, 342 S.W.3d 390, 395 (Mo. App. 2011). "The grounds asserted on appeal are limited to those stated at trial." *Id*. "An appellant may not broaden the objection he presented to the trial court, nor may he rely on a theory different from the one offered at trial." *Id.* Here, because Flores's grounds on appeal are different from the grounds for his objections at trial, he has failed to preserve his claims for review. Issues that were not preserved may be reviewed only for plain error under Rule 30.20. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).

Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error.

First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. *Baumruk*, 280 S.W.3d at 607. "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious and clear." *Id.* (citations and internal quotation marks omitted). In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.* at 607-08.

We conclude that Flores's claim does not facially establish substantial grounds for believing that he has been a victim of manifest injustice and we, therefore, exercise our discretion and decline a full plain error review. We note first that under *Crawford*, the use of testimonial hearsay does not violate the accused's fundamental right to confrontation of witnesses if the non-testifying witness is unavailable and the accused has had a prior opportunity to cross-examine that witness.[11] 541 U.S. at 53-54. Subsequent to the statements made by K.J. and C.J. to the witnesses, Flores had the opportunity to cross-examine them regarding those

---

[11]Flores argues for the first time in his reply brief that he did not have an opportunity to cross-examine the victims (via video deposition or otherwise) after he was charged with an additional fifteen counts. Arguments raised for the first time in a reply brief do not present issues for appellate review. *Berry v. State*, 908 S.W.2d 682, 684 (Mo. banc 1995). In any case, the evidence presented at this trial could not have differed significantly from that presented at his original trial (as is obvious from his complaints about the use of the children's *2006* out-of-court statements and their *2007* depositions). Because the additional fifteen counts were based on the same evidence as the original two counts, this argument is without merit.

14

statements during the videotaped depositions. *See State v. Perry,* 275 S.W.3d 237, 242 (Mo. banc 2009). It is undisputed that the depositions were conducted in compliance with section 491.680. The traditional protections that ensure the constitutional right to confrontation are the oath, cross-examination, and opportunity for the jury to observe the demeanor of the witness. *Id*. at 244-45. These depositions contained all those protections. Additionally, Flores cannot show prejudice from this alleged "error" because the circuit court pointed out at Flores's trial that it had held a hearing and concluded that the children were currently legally unavailable to testify live in Flores's presence, and defense counsel appeared to be well aware of that fact at Flores's trial and did not seek to revisit that ruling. Flores's confrontation rights were not violated, and his claimed error does not facially establish substantial grounds for believing that manifest injustice has resulted from the admission of the victims' videotaped depositions or other out-of-court statements. Points I and II are denied.

In Point III, Flores alleges that the circuit court plainly erred in submitting the verdict directors as to counts 9, 10, 12, and 13. He contends that those verdict directors allowed the jury to find him guilty of two counts of statutory sodomy (counts 9 and 10) and two counts of child molestation (counts 12 and 13) without a unanimous verdict, because they required the jury to find that he committed those crimes "after removing [C.J. or K.J.] from the bathroom," and the charged acts of sodomy or child molestation alleged to have occurred in the bedroom, cold room, or shed could have occurred after C.J. or K.J. were "removed from the bathroom."

Flores concedes that he did not properly preserve this claim for review, and he requests plain error review under Rule 30.20. As noted, we first must determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *Brown*, 902 S.W.2d at 284 (quoting Rule 30.20). "For

15

instructional error to constitute plain error, the defendant must demonstrate [that] the trial court 'so misdirected or failed to instruct the jury' that the error affected the jury's verdict." *State v. Celis-Garcia*, 344 S.W.3d 150, 154 (Mo. banc 2011) (citation omitted).

Criminal defendants in Missouri have the right to a unanimous jury verdict. MO. CONST. art. I, § 22(a); *Celis-Garcia*, 344 S.W.3d at 155. To comply with the constitutional mandate of a unanimous verdict, each verdict director must describe a separate criminal act with sufficient specificity to ensure that the jury has unanimously agreed on the same underlying criminal act for that count. *See Celis-Garcia*, 344 S.W.3d at 158. Flores asserts that because those four verdict directors failed to describe the charged acts with sufficient specificity to ensure that they were separate from the other charged counts, it is impossible to determine whether the jury unanimously agreed that he was guilty of the same act in convicting him on those four counts.

We disagree. We find that the verdict directors as to these four counts each described a separate criminal act with specificity and provided sufficient detail to ensure that the jury unanimously convicted him based on the same incidents. Count 9 charged statutory sodomy in the first degree and was submitted to the jury in Instruction 14 which alleged, in pertinent part,

> that between the dates of January 1, 2005 and April 4, 2006, at [address], the defendant or [Mother] placed his or her hand on [C.J.]'s genitals ***after removing [C.J.] from the bathroom***[.]

(Emphasis added.) Count 10 was submitted in Instruction 15, which was identical to Instruction 14, except that it substituted K.J.'s name for C.J.'s.

Count 12 charged child molestation in the first degree and was submitted in Instruction 18, which alleged, in pertinent part,

> that between the dates of January 1, 2005 and April 4, 2006, at [address], the defendant or [Mother] touched the breast of [K.J.] ***after removing [K.J.] from the bathroom***[.]

16

(Emphasis added.) Count 13 was submitted in Instruction 19, which was identical to Instruction 18, except that it substituted C.J.'s name for K.J.'s.

The case that Flores relies upon, *Celis-Garcia*, was the direct appeal of Mother's 2007 conviction which arose out of the same allegations made against Flores in this case. 344 S.W.3d at 152-53. The jury in *Celis-Garcia* heard the same deposition testimony and saw the same ChildSafe interviews, as did the jury in this case, and it also heard testimony about additional disclosures the victims had made. *See id.* at 153. The verdict director on the first count of statutory sodomy in that case stated

> that between the dates of January 01, 2005 and March 31, 2006, in the County of Saline, State of Missouri, the defendant or [her boyfriend] placed her or his hand on [C.J.]'s genitals[.]

*Id.* at 154. The instruction on the second count of first-degree statutory sodomy contained identical language, except that it named K.J. instead of C.J. *Id.* at 155. The Supreme Court found that the instructions violated the Missouri Constitution's requirement of a unanimous verdict because the depositions of the two victims described "multiple acts" of statutory sodomy occurring at different times and different locations. *Id.* at 155-56. But those "multiple acts" were charged in only a single count as to each victim, and the verdict directors failed to differentiate between the various acts in a way that ensured that the jury unanimously convicted the defendant of the same act or acts. *Id.* at 156. The Court directed that, in a "multiple acts case," one way to avoid violating the accused's right to a unanimous jury verdict is for the State to elect "the particular criminal act on which it will rely to support the charge." *Id.* at 157.

Here, the State followed the Supreme Court's recommendation in *Celis-Garcia*, that the State elect a particular criminal act and submit it as a separate charge. *See id.* At Flores's trial, the multiple acts of statutory sodomy and child molestation were submitted in ten counts of first-

17

degree statutory sodomy and six counts of first-degree child molestation. The various instructions described specific parts of the body that were touched and specified the location where the touching occurred.

Flores claims, nevertheless, that some jurors could have believed that the girls were taken from the bathroom to the cold room and touched, while other jurors could have believed that the girls were taken from the bathroom to the bedroom, and still others could have believed that the children were taken from the bathroom to the shed and touched.[12] However, the only evidence of the girls being taken out of the bathroom and touched was K.J.'s deposition testimony that both she and C.J. were twice taken from the bathroom to the cold room[13] and touched in all three private areas by both Flores and Mother.[14] Thus, this argument is without merit.

The outcome of plain error review depends on the specific facts and circumstances of each case. *State v. Ralston,* 400 S.W.3d 511, 520 (Mo. App. 2013). Flores notes that, in *Celis-Garcia*, the Court found a manifest injustice from the erroneous instructions based on the

---

[12]Flores argues that some of the jurors may have believed that the instructions referred to the incident when the girls were taken out of the shower or bathtub and touched *within* the bathroom, but he does not raise this in his point relied on. An argument not set out in the point, but merely referred to in the argument portion of the brief does not comply with Rule 84.04(d) and is considered abandoned. *Brizendine v. Conrad*, 71 S.W.3d 587, 593 (Mo. banc 2002). In any event, the instructions specifically refer to "*removing* [the victims] *from* the bathroom," and the jury was instructed "to be guided by the instructions of law given . . . and the evidence as the jury recalls it." We presume that the jury followed the court's instructions. *See State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999).

[13]Flores makes no unanimity argument with regard to the fact that only one incident of being taken from the bathroom to the cold room was submitted. Also, although Flores also was charged with committing statutory sodomy and child molestation as to both K.J. and C.J. in the cold room, those charges referred to separate incidents from the times when he removed them from the bathroom and then sexually abused them in the cold room.

[14]K.J. stated in her deposition that the second time she was touched was when she was handcuffed in Mother's bedroom. Flores contends that K.J. stated that he and Mother had first taken her out of the shower that time. But it is evident that K.J.'s statement about being taken out of the shower referred to her next assertion that Mother and Flores came into the bathroom while she and C.J. were showering and took them to the cold room where they touched their private places. It could not have referred to when they were taken to the bedroom, because K.J. made it clear that they had no clothes on when taken out of the shower. Yet, in discussing the incident when she was handcuffed in the bedroom, she twice stated that they had taken her clothes off, implying (obviously) that she had clothes on when she went into the bedroom and, thus, had *not* just been taken out of the shower.

18

defense's trial strategy of seeking to exploit factual inconsistencies and raise doubts about the plausibility of the specific incidents of statutory sodomy alleged by the victims. 344 S.W.3d at 158-59. The Court differentiated that defense from a defense that simply argued that the victims entirely fabricated their stories. *Id.*

Here, because we find no error, plain or otherwise, in submitting the verdict directors on counts 9, 10, 12, and 13, we need not delve into Flores's trial strategy. His claim does not facially establish substantial grounds for believing that he is a victim of manifest injustice, and we therefore decline a full plain error review. Point III is denied.

In his next three points, Flores asserts a double jeopardy violation. He contends that his convictions on six of the counts constitute multiple punishments for the same offense because none of the conduct charged in those counts was separate or distinct from the conduct charged in another count for which he was convicted. Flores concedes that he did not raise any double jeopardy claims at trial or include them in his motion for new trial, thus, he asks for plain error review under Rule 30.20. We will conduct plain error review of an unpreserved double jeopardy claim if the alleged double jeopardy violation is "determinable from the face of the record." *State v. Roggenbuck*, 387 S.W.3d 376, 380-81 (Mo. banc 2012). In order to establish plain error, Flores "bears the burden of demonstrating that an error so substantially affected his rights that 'a manifest injustice or miscarriage of justice has resulted therefrom.'" *Id.* at 381 (citation omitted).

In Point IV, Flores contends that the circuit court plainly erred in entering judgments of conviction and sentencing him on counts 9 and 10 and counts 12 and 13 because he was punished twice for the same acts, in violation of his rights to due process and to be free from double jeopardy under the United States and Missouri Constitutions. U.S. CONST., amends. V,

19

VI, and XIV; MO. CONST., art. I, § 10. He contends that the conduct charged in those four counts was the same conduct with which he was charged in counts 2, 3, 4, 6, 11, and 15.

Counts 1 through 10 of the indictment charged Flores with first-degree statutory sodomy. Counts 9 and 10 were based on Flores or Mother touching the genitals of C.J. and K.J., respectively, after removing the girls from the bathroom. Count 2 alleged that Flores or Mother touched the genitals of K.J. in the bedroom; counts 3 and 4 charged that Flores or Mother touched the genitals of C.J. and K.J., respectively, in the cold room; and count 6 charged that Flores or Mother touched K.J.'s genitals in the bedroom while she was in handcuffs. Counts 11 through 16 charged Flores with first-degree child molestation. Counts 12 and 13 were based on Flores or Mother touching the breasts of K.J. and C.J., respectively, after removing them from the bathroom. Count 11 alleged that Flores or Mother touched K.J.'s breasts while she was in the bedroom, and count 15 alleged that Flores or Mother touched K.J.'s breasts in the cold room.

The double jeopardy clause protects a criminal defendant from multiple punishments for the same offense. *Roggenbuck*, 387 S.W.3d at 381. Multiple convictions are permissible, however, if the defendant has in law and in fact committed separate crimes. *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998). Here, the crux of Flores's claim is that the incidents of abuse that occurred in the cold room or the bedroom (as alleged in counts 2, 3, 4, 6, 11, and 15) were not shown to be distinct from the incidents that occurred after the victims were removed from the bathroom (as alleged in counts 9, 10, 12, and 13). But the record does not support this claim.

All of the above-named counts involved different conduct. K.J. testified that the first two incidents of touching occurred on the same day. One incident occurred in Mother's bedroom when the girls were handcuffed and hung on the wall. After describing how they were handcuffed, K.J. then said that Flores took her and C.J. out of the shower and took them to the

20

cold room.  K.J. testified about a third incident where the girls were taken from the shower to the cold room.  That testimony shows that the touching that occurred after the girls were removed from the bathroom was separate from any incidents of touching that occurred in the bedroom.  None of the testimony establishes that the victims were removed from the bathroom and then taken to the bedroom to be touched.  Thus, the convictions on counts 9 and 10 and on counts 12 and 13 were not based on the same conduct as charged in counts 2, 6, and 11, and no double jeopardy violation occurred as to those counts pertaining to the bedroom.

Nor were the convictions for touching the girls after they were removed from the bathroom (in counts 9, 10, 12, and 13) based on the same conduct as was alleged in counts 3, 4, and 15, pertaining to incidents in the cold room.  K.J. said in her Child Safe interview that she and C.J. were touched in the cold room "a bunch of times."  But she described only two incidents of being taken to the cold room after being removed from the bathroom.  Both children told their foster parents about being touched in the cold room without any apparent reference to being first removed from the bathroom.  In sum, there was evidence supporting a finding that there were incidents of touching in the cold room that were separate and distinct from the incidents where the victims were first removed from the bathroom.

We also reject Flores's contention that these charges for committing statutory sodomy and child molestation after "removing [the children] from the bathroom" violate the double jeopardy clause because they "split a single crime and prosecute it in separate parts." *See State v. Polson*, 145 S.W.3d 881, 896 (Mo. App. 2004) (quoting *State ex rel. Westfall v. Campbell,* 637 S.W.2d 94, 97 (Mo. App. 1982)).  Flores notes that nothing in either section 566.062 or section 566.067 indicates that there is a separate unit of prosecution or that the legislature intended a second and cumulative punishment if the person who committed either of those crimes first

21

removed the child from another room.[15]  The charges do not add a new element, rather the factual detail of the children being sodomized and molested after being "removed from the bathroom" was necessary to distinguish those crimes from the other occasions when the children were sodomized and molested while in the cold room to avoid the unanimity claim raised in Point III.  *See Celis-Garcia*, 344 S.W.3d at 158 (distinguishing characteristics are to be included in a verdict director in a "multiple acts" case where necessary to preserve the right to a unanimous jury verdict).

Based on the foregoing, no double jeopardy violation is apparent "from the face of the record."  *See Roggenbuck*, 387 S.W.3d at 381.  Nor does Flores's claimed error facially establish substantial grounds for believing that manifest injustice has resulted from his conviction and sentencing on counts 9, 10, 12, and 13.  *See Brown*, 902 S.W.2d at 284.  We therefore decline a full plain error review.  The point is denied.

In Point V, Flores argues that the circuit court plainly erred in entering judgments of conviction and in sentencing him on counts 1 and 5 for first-degree statutory sodomy as to C.J. He claims that he was punished twice for the same offense in those two counts because the conduct alleged in count 1 is included in the conduct alleged in count 5, and the evidence did not establish separate offenses.  In Point VI, Flores raises the same double jeopardy claim as to counts 2 and 6, on which he was convicted of first-degree statutory sodomy as to K.J.  Because both points rely on the same essential facts and legal theories, we address them together.

---

[15]Pursuant to section 566.062.1, "[a] person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old."  Under section 566.067.1, "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact."

Each of the counts involved charged statutory sodomy in the first degree. Count 1 was submitted to the jury in Instruction 6, which alleged, in pertinent part, that

> *in the bedroom* of [Mother] at [address], the defendant or [Mother] placed his or her hand on [C.J.]'s genitals[.]

(Emphasis added.) Count 5 was submitted to the jury in Instruction 10, which alleged, in pertinent part, that

> *in the bedroom* of [Mother] at [address], the defendant or [Mother] placed his or her hand on [C.J.]'s genitals *while [C.J.] was in handcuffs*[.]

(Emphasis added.) The instructions as to Counts 2 and 6 make identical allegations as to *K.J.*

As noted, the double jeopardy clause prohibits multiple punishments for the same offense. *Roggenbuck*, 387 S.W.3d at 381. But "[m]ultiple convictions are permissible if the defendant has in law and in fact committed separate crimes." *Flenoy*, 968 S.W.2d at 143. Flores's argument, as to both points, is that his convictions for touching the victims in the bedroom and for touching the victims in the bedroom while they were in handcuffs violated his right to be free from double jeopardy because there was no evidence that any touching occurred in the bedroom when the victims were not in handcuffs. This claim is wholly without basis in the record. There was testimony from both C.J. and K.J. about being touched in the bedroom which made it clear that they were not at that time in handcuffs. Thus, the evidence supported the existence of different acts as alleged in the indictment and the verdict directors.

C.J. testified in her deposition that the first time she was touched was in Mother's bedroom while C.J. was standing by the bed. Flores and Mother were on the bed, and they then stood up and touched C.J.'s "front private" with their hands. C.J. also said that she saw Flores and Mother touch K.J.'s front private and breasts with their hands in the bedroom. C.J. did not describe handcuffs being used in those incidents. And although C.J. did later talk in general

23

terms about her and K.J. being handcuffed in the bedroom, she did not testify that they were handcuffed every time they were touched in the bedroom. K.J. stated in her ChildSafe interview that she had been touched in Mother's bedroom while she was lying on her stomach on the bed. She made no mention of being handcuffed at the time.

Again, we reject Flores's claim that the counts charging him with statutory sodomy while the children were in handcuffs subjects him to double jeopardy because the counts split a single crime and prosecute it in separate parts. This simply is not the case. Including the factual details of the children being sodomized and molested in the bedroom "while in handcuffs" was necessary to distinguish those crimes from the crimes that occurred while the children were in the bedroom while *not* in handcuffs, in order to avoid the unanimity problem raised in Point III.

Because there was evidence that would support a finding of sodomy and molestation in the bedroom when the victims were not in handcuffs, Flores's convictions on counts 1 and 5 were not based on the same conduct for which he was convicted on counts 2 and 6. Again, no double jeopardy violation is apparent from the face of the record, nor does the claimed error facially establish substantial grounds for believing that manifest injustice has resulted from these convictions. Points V and VI are denied.

In his seventh and final point, Flores contends that the circuit court plainly erred in entering a judgment of conviction and in sentencing him for first-degree child molestation on count 14 because it was "null, void and without legal effect." He contends that the court never acquired personal jurisdiction over him as to count 14 because the indictment did not include Flores's name but named only Mother. Flores concedes that this claim was not preserved and asks for plain error review. As noted, we first determine whether or not the claimed error

24

"facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *Brown*, 902 S.W.2d at 284 (quoting Rule 30.20).

As previously noted, Flores and Mother were jointly charged in the superseding indictment. Count 14 charged the offense of child molestation in the first degree. It alleged that "defendant [Mother's name] subjected K.J., who was then less than fourteen years old to sexual contact by placing her hands on the breasts of K.J. in the shed." The count did not contain Flores's name, even though every other count of the indictment charged both Flores and Mother with committing the respective offenses.[16] Count 14 was submitted to the jury in Instruction 20, which directed the jury to find ***Flores*** guilty of child molestation in the first degree under an accomplice liability theory ***if either he or Mother*** touched the breast of K.J.

When the issue of an insufficient indictment is raised for the first time after verdict, the indictment "will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced." *State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992). In either case, a defendant will not be entitled to relief unless the defendant can demonstrate "actual prejudice." *Id*. "A defendant suffers actual prejudice if the information or indictment was either so deficient that the defendant was not placed on notice as to what crime he or she was being charged with or was so lacking in clarity that the defendant was unable properly to prepare a defense." *State v. Williams*, 126 S.W.3d 377, 381 (Mo. banc 2004). Here, it is obvious, from viewing the indictment in its entirety, that Flores's name was unintentionally omitted from count

---

[16]Under the verdict directors, the jury could convict Flores of child molestation if he, himself, placed his hand on the breasts of the children or if he aided Mother in doing the same. *See* § 562.041.1, RSMo 2000.

14, which should have been apparent to both him and his attorney. Flores was aware of the charge raised in count 14 and was able to present a defense, including his own testimony. Flores fails to demonstrate "actual prejudice."

In any event, it is well established that "[j]urisdiction over the person is waived by appearing and defending without objection," which Flores concedes he did here. *See Parkhurst*, 845 S.W.2d at 35 n.4. Flores is unable to show actual prejudice and has waived his claim of lack of personal jurisdiction. No manifest injustice or miscarriage of justice based on this claim is facially apparent. The point is denied.

## Conclusion

None of Flores's claimed errors facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has resulted from any of those claimed errors. We, therefore, affirm the circuit court's judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Chief Judge

All concur.

26