

# Missouri Court of Appeals
## Southern District
### Division Two

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| vs. | ) No. SD35350 |
| | ) |
| WADE A. STUCKLEY, | ) FILED: May 13, 2019 |
| | ) |
| Appellant. | ) |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Thomas E. Mountjoy, Judge

**AFFIRMED**

Wade Stuckley was convicted of sodomizing and molesting his girlfriend's (now wife's) four-year-old child ("Victim"). Each of his three points on appeal seeks plain-error review, two raising ***Celis-Garcia*** complaints[1] and one charging double jeopardy.

A plain-error claim "places a much greater burden on a defendant than an assertion of prejudicial error." ***State v. Ralston***, 400 S.W.3d 511, 520 (Mo.App. 2013). A defendant must show not only that the trial court committed evident, obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice. ***State v. Mueller***, 568 S.W.3d 62, 75 (Mo.App. 2019). To prove plain instructional error, the defendant "must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict."

---

[1] ***State v. Celis-Garcia***, 344 S.W.3d 150 (Mo. banc 2011), discussed *infra*.

***Celis-Garcia***, 344 S.W.3d at 154 (citations and internal quotation marks omitted).  Even clear and obvious instructional error rarely works a manifest injustice or miscarriage of justice demanding plain-error reversal.  ***State v. Parsons***, 339 S.W.3d 543, 549 (Mo.App. 2011).  The outcome of plain-error review depends heavily on the facts and circumstances of each case.  ***Ralston***, 400 S.W.3d at 520.

Given the facts and circumstances of this case, and particularly how it was tried, Stuckley fails to convince us that anyone committed evident, obvious, and clear error, or that modified instructions would have changed the verdicts.  We affirm the convictions.

## Background

After several police interviews, the state charged and later tried Stuckley on three counts alleged to have happened at home between May 28 and June 13, 2014:

> 1.  A bath incident where Stuckley admitted to police that he had inserted his pinky into Victim's vagina.  This was charged, presented at trial, and instructed upon as Count I.

> 2.  A bedroom tickling incident where Stuckley admitted to police that he probably had inserted his thumb into Victim's vagina, Victim said "Don't touch me down there," and Stuckley immediately apologized.  This was charged, presented at trial, and instructed upon as Count II.

> 3.  Other tickling incidents in Victim's bedroom where Stuckley's hand touched Victim's vagina without penetration.  This was charged, presented at trial, and instructed upon as Count III.

This matchup of acts with charges continued through trial, beginning with the prosecutor's opening-statement reference to what was charged as Count I and would be the subject of Instruction 5 (our emphasis):

> You're going to hear from the defendant how he describes *one particular instance* that stands out in his mind.  He remembers *carrying four-year-old [Victim] out of the bathtub after she was getting a bath*.  He'll describe to you that he remembered she was wet and slippery and his hands were wet and slippery from helping her wash her hair.
>
> He'll talk about remembering his right hand on her upper back and his left hand underneath the buttocks.  He remembers the thumb of his left hand brushing up against the lips of her vagina.  He'll talk about her slipping and *his pinky finger*

2

*inserting into her vagina* about one inch or up to his first knuckle. He'll tell police officers that once that happened, he yanked it out real quick.

The prosecutor then moved to what was charged as Count II and would be the subject of Instruction 6 (our emphasis):

The defendant remembered *another particular circumstance* in which his fingers had been inserted inside [Victim's] vagina in that two-week period. You'll hear him describe to police officers that *when he would put [Victim] to bed at night, he would often tickle her. On this particular incident*, he remembered her wearing a dress nightgown, with panties.

He talked about tickling her on her upper leg, inner thigh, and back of leg area. *On this particular night*, his left hand again*, the thumb this time, slipped* inside the elastic band of the leg part of her underwear and *into her vagina*, again about one inch or up to the first knuckle.

*That particular incident stood out to the defendant because he remembers four-year-old [Victim] saying, "No, don't touch me there." And he said to her, "I'm sorry.* I was just tickling. It was an accident." And again he told officers that he pulled his thumb out real quick once that happened.

Finally, the prosecutor briefly touched on what was charged as Count III and would be the subject of Instruction 7 (our emphasis):

The defendant also remembers *several other times,* about three or four, *that his hand and fingers grazed against [Victim's] vagina* when he was tickling her.

Presentation of evidence was consistent with these matchups, as were closing arguments and the verdict-directing instructions, where jurors had to agree that Stuckley:

- "inserted his finger" into Victim's vagina for guilt on Count I under Instruction 5,

- "inserted his thumb" into her vagina for guilt on Count II under Instruction 6, and

- "touched the genitals of [Victim] with his hand" for guilt on Count III under Instruction 7.

Stuckley's trial defense was to admit these touchings and penetrations, but deny they were prompted by sexual desire as the instructions required for guilt on

3

each count.  The jury acquitted Stuckley on Count I (statutory sodomy, finger insertion), and found him guilty on Count II (statutory sodomy, thumb insertion) and Count III (child molestation, genital touching without penetration).

We take Stuckley's three points out of order for convenience.

### Point 2 – Instruction 6/*Celis-Garcia*

In *Celis-Garcia*, our supreme court considered Missouri's constitutional right to a unanimous jury verdict in a "multiple acts" case, *i.e.*, one where "there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts *in a single count*."  344 S.W.3d at 155-56 (our emphasis).

For example, this would have been a multiple-acts case had the state tried all of Stuckley's acts as one child-molestation count, or both vaginal penetrations as one statutory-sodomy count.  In those situations, the verdict directors would have needed to "differentiate between the various acts in a way that ensured the jury unanimously convicted [Stuckley] of the same act or acts."  *Id*. at 156.  "'The defendant is entitled to a concurrence of the minds of the 12 jurors upon one definite charge of crime.'"  *Id*. at 155 (quoting *State v. Jackson*, 146 S.W. 1166, 1169 (Mo. 1912)).

But the state did not charge or try this as a multiple-acts case.  Instead, per one of our supreme court's *Celis-Garcia* recommendations, the state elected to submit particular criminal acts in separate charges.  344 S.W.3d at 157; *State v. Flores*, 437 S.W.3d 779, 791 (Mo.App. 2014).  It charged, tried, and instructed upon the two vaginal penetrations as separate counts differentiated by thumb vs. finger penetration.  It also charged, tried, and instructed upon the bedroom incidents separately:  statutory sodomy (thumb penetration) vs. child molestation (other fondlings without penetration).[2]  Not surprisingly, the court and parties thus tried and seemingly perceived this as not being a multiple-acts case.

Yet astute appellate counsel has found and now proffers this brief snippet

---

[2] Multiple incidents in this Count III charge do not present a *Celis-Garcia* problem as explained in *State v. Henry*, 568 S.W.3d 464, 476-77 (Mo.App. 2019); *State v. Armstrong*, 560 S.W.3d 563, 572-74 (Mo.App. 2018); and *State v. Walker*, 549 S.W.3d 7, 11-12 (Mo.App. 2018).

4

from early in Stuckley's final police interview:

> I don't know if that hand may have – the thumb or something
> went up in there when I picked her up [from the bathtub] like that
> or not. I don't recall it going in there.

Point 2 asserts this was evidence that Stuckley *twice* vaginally penetrated Victim with his thumb (at bedtime as he testified, but also during the bath incident) such that Count II would be a multiple-acts count with a verdict director, Instruction 6, that violated **Celis-Garcia**.

While we are skeptical that a fleeting and equivocal *denial* of thumb penetration raises a **Celis-Garcia** concern in the context of this case,[3] the issue is whether Stuckley has shown, as he must for plain-error relief, that any error was evident, obvious, and clear. **Mueller**, 568 S.W.3d at 75. This case was tried by a very experienced criminal-trial judge, a defense attorney who previously had raised **Celis-Garcia** as appellate counsel in this court,[4] and a prosecutor's office that charged and tried the case consistent with **Celis-Garcia** principles. Plainly, no one perceived the now-touted snippet – more a denial of penetration than an admission, only 10 seconds of a 54-minute sound recording played during a two-day trial – as having put **Celis-Garcia** in play. Error or not, we see no evident, obvious, and clear **Celis-Garcia** trigger in any real-time, real-world sense of those words.

Although that failing alone nixes plain-error relief (**Mueller**, 568 S.W.3d at 75), Stuckley also fails to show manifest injustice. **Celis-Garcia**'s stated concern was juror unanimity about a defendant's *acts* and manifest injustice from a failure *in that regard*. For example:

> [T]he fact that Ms. Celis-Garcia relied on evidentiary
> inconsistencies and factual improbabilities respecting each
> specific allegation of hand-to-genital contact makes it more
> likely that individual jurors convicted her *on the basis of
> different acts*. The Court finds that the verdict directors

---

[3] *Cf.* **State v. Watson**, 512 S.W.3d 94, 97-98 (Mo.App. 2017)(no unanimity concern when victim's testimony did not establish multiple acts of digital penetration and defendant admitted to only one such act).

[4] *See* **State v. Rose**, 421 S.W.3d 522 (Mo.App. 2013), *abrogated by* **Hoeber v. State**, 488 S.W.3d 648 (Mo. banc 2016).

misdirected the jury in a way that affected the verdict, thereby resulting in manifest injustice.

344 S.W.3d at 159 (our emphasis). Similar reasoning may – or may not – even fit certain cases where defendants employ a general or unitary defense that the victim lied about everything and none of the alleged acts occurred. *See **Hoeber***, 488 S.W.3d at 656-58; ***Sanders v. State***, 564 S.W.3d 380, 384 n.5 (Mo.App. 2018).

But here, Stuckley *admitted* the acts alleged and charged. The defense theme from opening statement through closing argument was that Stuckley *did* touch or penetrate Victim as alleged, but never with criminal (sexual) intent. *Actus reus* was never at issue, only *mens rea*. Given that defense, Stuckley fails to explain why Instruction 6 needed to be more act-specific or so misdirected the jury as to affect the verdict.[5] Point 2 fails.

### Point 3 – Instruction 7/*Celis-Garcia*

Stuckley's complaint about Instruction 7, which required jurors to find that he "touched the genitals of [Victim] with his hand," cites

- Victim's testimony about bedroom touchings,
- Stuckley's testimony and police statement about bedroom touchings, and
- Stuckley's testimony and police statement about whether he may have accidentally brushed Victim's genitals during the bath incident,

in asserting that Count III was a multiple-acts charge and Instruction 7 thus violated ***Celis-Garcia***.

We do not understand Stuckley to claim that the multiple bedroom acts, of themselves, raise ***Celis-Garcia*** issues. *See* note 2 *supra*. Stuckley's equivocal reference to a bath touching seems a weak concern given his defense strategy to admit *actus reus* and deny only *mens rea*. But if Stuckley was concerned about

---

[5] Indeed, this defense focus may offer reasons for competent defense counsel *not* to cite ***Celis-Garcia***. When a defendant admits acts, juror unanimity on that issue rarely is a key defense concern. Also, ***Celis-Garcia*** instruction modifications (see 344 S.W.3d at 157) seem unlikely to meaningfully help a *mens rea* defense in that situation, but might give the state more ammunition for closing argument. *See **Sanders***, 564 S.W.3d at 382, 383, 385.

this bath reference, he needed to raise this at instruction conference so the court and parties could timely address it. He did not, and his plain-error claim fails for reasons already stated. *See also* **Henry**, 568 S.W.3d at 477 (state's evidence and argument focused the jury on one of two acts sufficiently to prevent manifest injustice). We also note the jury's Count I acquittal, effectively the bath incident, further suggesting that jurors understood the instructions in the context of the case and no manifest injustice occurred. Point denied.

## Point 1 – Double Jeopardy

In the points discussed previously, Stuckley portrayed each of his two convictions as **Celis-Garcia** situations – a single charge provable by multiple, independently-culpable acts in evidence. Here he draws on "instructing down" cases that address a much different situation – a single act constituting multiple crimes, specifically lesser-included offenses. Citing instructional-error cases that treat child molestation as a lesser-included offense of statutory sodomy, Stuckley claims double jeopardy because he was convicted of both.

This hardly merits discussion. It was not double jeopardy if Stuckley "in law and in fact committed separate crimes." **Flores**, 437 S.W.3d at 793; *see also* **State v. Clark**, 494 S.W.3d 8, 13 (Mo.App. 2016)(crimes are separate if counts are based on different acts). Stuckley does not deny record evidence of separate acts to support each of his convictions, so his unpreserved double-jeopardy claim does not warrant review. *Compare* **Flores**, 437 S.W.3d at 792-94.[6] We deny Point 1 and affirm the judgment and convictions.

DANIEL E. SCOTT, J. – OPINION AUTHOR
WILLIAM W. FRANCIS, JR., P.J. – CONCURS
MARY W. SHEFFIELD, J. –CONCURS

---

[6] After being convicted of 17 child-sex counts, Flores sought plain-error double-jeopardy relief as to four counts for which he claimed the supporting acts were indistinct from the acts supporting six other counts. **Id**. at 793. The Western District declined plain-error review because the record did not support Flores' assertions (**id**.), double jeopardy was not apparent from the record, and Flores had not facially established substantial grounds for believing manifest injustice had occurred. **Id**. at 794.