**STATE of Missouri, Respondent,**

v.

**Yahshee ROBINSON, Appellant.**

**No. ED 91896.**

Missouri Court of Appeals, Eastern District, Division One.

Sept. 15, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 21, 2009.

Application for Transfer Denied Dec. 22, 2009.

Gwenda R. Robinson, St. Louis, MO, for appellant.

Chris Koster, Jayne T. Woods, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Yahshee Robinson ("Defendant") appeals from the judgment of the trial court following jury verdicts of guilty on charges of murder in the first degree, armed criminal action, and tampering with physical evidence. The trial court sentenced Defendant as a persistent offender to concurrent terms of imprisonment for life without the possibility of parole, for ten years, and for four years on the charges of murder, armed criminal action, and tampering respectively. We affirm in part and modify in part.

Viewed in the light most favorable to the verdicts, the facts are as follows. In 2006, Defendant lived in the City of St. Louis with his girlfriend, Stephanie Mittler, and their infant son in a four-plex apartment building occupied by one other couple. Terrence Scott ("Decedent") visited Defendant's apartment on a frequent basis, nearly every day, and used marijuana and heroin with Defendant and Mittler. Decedent often carried a gun with him when he visited Defendant and Mittler, and at their request he would leave his gun outside of their apartment unit. Other than being an annoying houseguest who would eat their food and use their phone, Decedent never caused problems for Defendant and Mittler.

Decedent did not pay for the drugs that he used while at Defendant's residence. This disturbed Defendant. On or about November 1, 2006, Defendant, who was drinking with his neighbor, Terry Ginn, said that he was tired of Decedent not paying him, and that he was "gonna kill this motherfucker." At the time of this conversation, Defendant was in possession of a handgun, a .357 magnum.

On November 8, 2006, Decedent again went to Defendant's apartment to use drugs. Defendant and Decedent were using drugs in the kitchen of the apartment while Mittler took care of her son, who was ill, in another room. Defendant went into the other room, where Mittler told him that she wanted Decedent to leave because it was late. Defendant concurred, and went back to the kitchen. Mittler heard the pair arguing in the kitchen, and the sounds of a struggle, followed by a loud noise. She opened the bedroom door and saw Decedent lying on the kitchen floor, bleeding. Mittler observed Defendant put a gun on the countertop, and heard him say "quit playin" and "get up." Mittler wanted to call the police, but Defendant said not to do so, as he feared going back to jail. Mittler called the neighbors and asked for latex gloves, and Defendant called to borrow a trashcan. Defendant placed Decedent's body in the trashcan, while Mittler cleaned blood from the kitchen floor. Defendant put the trashcan containing the Decedent in the basement of the apartment building. Sometime thereafter, Mittler saw a white sedan in the alley by her apartment. The following day, November 9, 2006, she and Defendant watched a news report that a white car with a body in it had been set on fire near their former residence. Defendant told her that he had placed Decedent's body in the white car and set it on fire.

The police received an anonymous call on November 13, 2006, and informed the police that Defendant was responsible for the murder of the man found in the burned car. The caller stated that the deceased had been shot in the head at Defendant's residence. At approximately 6:00 a.m. on November 14th, the police arrived at Defendant's apartment, where he and Mittler were using drugs. Mittler saw that the police were at the door, and informed Defendant, who fled out the back door. Mittler then let the police into the apartment. Two officers searched the building, while a third told her that the police had gotten a

tip that a murder had occurred there, and he asked for her consent to search, including allowing lab technicians to conduct chemical analyses. Mittler gave her consent, and signed a consent to search form.

The police found a shopping list that included bleach and floor cleaner in the apartment, and noted that the floors appeared to be very clean. Mittler went next door to ask Ginn to babysit for her while she went to the police station, and Ginn seemed nervous. The police asked Ginn for his consent to search his apartment, which he gave, and they found Defendant hiding in the bedroom. In the common areas of the building, the police found a mop head, mop handle, and a bucket. Analysis of the mop head revealed the presence of blood. They also found an old used car battery, which the police considered relevant because the burned white car with Decedent's body had had a brand new battery in it.

At the police station, Defendant and Mittler were interviewed separately. Defendant was informed of his *Miranda* rights and indicated that he understood those rights. He told the police that Mittler was innocent and uninvolved. Defendant provided police with a written statement with his version of events. He confessed that he had killed Decedent, whom he claimed had previously threatened him, Mittler, and their son with a .357 Magnum a week prior to the night of the shooting. Defendant stated that Decedent had brought the gun to the apartment that night and left it on the kitchen table. He said that he grabbed the gun, briefly entered the bathroom, then came out and shot Decedent in the head, put his body in a trashcan in the basement, contacted a person who could obtain a stolen car, put the body in the white car, drove it away, and set it on fire. He also informed the police of Decedent's identity.

Following his arrest, Defendant contacted Mittler and advised her as to how she should testify at his trial. He told her that it would help his self-defense argument if she said she had observed what happened, and threatened to help send her to prison for helping him clean up. Defendant also sent her a letter advising her what to say.

Defendant was charged as a prior offender with murder in the first degree in violation of section 565.020 RSMo 2000 ("Count I"), armed criminal action in violation of section 571.015 RSMo 2000 ("Count II"), and tampering with physical evidence in violation of section 575.100 RSMo 2000 ("Count III"). A number of police officers testified at trial, as did Ginn and Mittler. Defendant testified and asserted that he acted in self-defense. During the course of his testimony, Defendant admitted that he had prior felony convictions for tampering, stealing a car, and using a stolen credit card. While the jury deliberated, the State offered Exhibit 62, a certified copy of Defendant's plea of guilty to stealing a credit device in November 2000, and the trial court found beyond a reasonable doubt that Defendant was a prior offender. The jury returned verdicts of guilty as to all three counts. Thereafter the trial court sentenced Defendant to terms of imprisonment for life, for ten years, and for four years on Counts I, II, and III respectively, with the sentences to run concurrently.

Defendant now appeals from the judgment of the trial court.

■ In his first point relied on, Defendant contends that the trial court erred by abusing its discretion in permitting Ginn to testify that Defendant told him that he was going to kill Decedent one week before the fatal shooting because the State failed to disclose that Ginn would testify about his prior inculpatory statement until the second day of the trial. Defendant asserts

that this disclosure violated Rule 25.03(A), surprised the defense, and resulted in fundamental unfairness in that it was extremely prejudicial, providing the State with evidence of motive and deliberation and contradicted his claim of self-defense. He argues that there is a reasonable likelihood that an earlier disclosure would have affected the result of the trial, and the error denied him the rights to due process of law, to present a defense, and to a fair trial.

■ The record reflects that Ginn informed the State about Defendant's inculpatory statement at approximately 11:00 a.m. of the second day of the trial, and the State informed defense counsel during the lunch recess. Defense counsel talked to Ginn during the recess, and had talked to him the day before, at which time Ginn had not told defense counsel about the inculpatory statement. The State is obligated to disclose evidence that it has in its possession or control, but it is impossible for the State to disclose evidence that it has not discovered. The State has no duty under the Due Process Clause to disclose information that it does not have, nor does it have an obligation under Missouri's rules of discovery to disclose evidence that it does not possess. *State v. Stewart*, 18 S.W.3d 75, 92 (Mo.App.2000). The State disclosed the information to defense counsel shortly after it learned of it, and it is difficult to see how the State could have disclosed much earlier. The disclosure was timely. *See State v. Bailey*, 672 S.W.2d 682 (Mo.App.1983). Ginn's failure to reveal Defendant's prior inculpatory statement was a proper subject for impeachment. *See State v. Vaughn*, 11 S.W.3d 98, 103 (Mo.App.2000). Defense counsel attempted to impeach Ginn by cross-examining him on his failure to disclose the statement at issue earlier to anyone, and the jury made its determination

of his credibility. It was not a violation of Rule 25.03 for the State not to disclose information that it had not discovered. The trial court did not abuse its discretion.

■ Assuming *arguendo* that the State violated Rule 25.03(A) with a late disclosure, this does not automatically mandate reversal and remand. The Missouri Supreme Court has held that the trial court's denial of a requested sanction for a violation of Rule 25.03 is an abuse of discretion only when the admission of the evidence results in fundamental unfairness to the defendant. *State v. Edwards*, 116 S.W.3d 511, 534 (Mo. banc 2003) (quoting *State v. Rousan*, 961 S.W.2d 831, 843 (Mo. banc 1998)). Fundamental unfairness depends on whether there was a reasonable probability that an earlier disclosure of the evidence requested would have affected the result of the trial. *State v. Carlisle*, 995 S.W.2d 518, 521 (Mo.App.1999).

■ The basic purpose of the discovery process in a criminal proceeding is to allow the defendant a reasonable opportunity to prepare in advance of the trial and avoid surprise. *Id.* Where counsel is surprised by evidence at trial, but addresses it in precisely the same manner as if he had been fully prepared, there is in effect no surprise and the result of the trial is not affected. *Id.* "[T]here is no reason to exclude that evidence, however significant, based on a discovery violation." *State v. Kilgore*, 771 S.W.2d 57, 66 (Mo. banc 1989). Defendant has not argued in his brief how he would have handled the inculpatory statement differently had it been disclosed by the State sooner other than to assert that he could have prepared to meet it with evidence of his own or conducted a "goal-directed cross-examination" about the circumstances under which the statement was made and its content. Counsel for the defense impeached Ginn on cross-examination for his failure to disclose the

inculpatory statement prior to trial, despite the previous interviews Ginn had with the police, the prosecutor, and defense counsel, attacking his claims that he had been too "scared" to tell the police everything, even when he was safe in the prosecutor's office. Defendant does not allege that there were other witnesses who could have rebutted or clarified the inculpatory conversation, or what other questions he could have asked Ginn on cross-examination if he had more time to prepare. In his testimony, Defendant did not deny making the statement, or assert that it was not made seriously. The inculpatory statement was damaging in that it contradicted Defendant's claim of self-defense, but a defendant is not entitled to exclude evidence simply because it hurts his case. *State v. McDaniel*, 254 S.W.3d 144, 147 (Mo.App.2008). As this Court has noted, evidence that the facts contradict a party's contentions is always damaging to his case, but that cannot be a basis for exclusion. *State v. Morris*, 585 S.W.2d 231, 234 (Mo. App.1979). Defendant has not demonstrated that the admission of the inculpatory statement resulted in fundamental unfairness. Point denied.

■■ In his second point relied on, Defendant avers that the trial court clearly erred by abusing its discretion in admitting a handwritten letter dated December 12, 2007, to Mittler from him that told her what to say in support of his defense because the State failed to disclose this letter until the second day of the trial in violation of Rule 25.03(A), which resulted in fundamental unfairness. Defendant argues that the letter provided the jury with inculpatory evidence from which it could infer his consciousness of guilt and that his claim of self-defense was a fabrication. He asserts that there is a reasonable likelihood that an earlier disclosure would have affected the result of the trial, and that this denied

him his rights to due process of law, to present a defense, and to a fair trial.

The record reflects that Mittler did not disclose the existence of the letter to the State until the second day of Defendant's trial, a day before her testimony. It was disclosed to defense counsel the same day that Mittler informed the State of its existence. In her testimony, Mittler explained that she did not tell the State about the letter sooner because at first she did not want to make matters worse for Defendant, and she had left that letter, along with others from Defendant, in the custody of a neighbor. Mittler also testified that Defendant had talked to her several times on the telephone and in those conversations he had tried to tell her what to say and to state that she had seen things that she had not witnessed. She stated that those conversations matched the general tenor of the December 12, 2007 letter to her.

■ As previously stated, the State has a duty to disclose information in its possession or control, but there is no obligation to disclose information that it has not discovered. *Stewart*, 18 S.W.3d at 92. The disclosure was as timely as the State could make it under the circumstances. *Bailey*, 672 S.W.2d 682. In his brief, Defendant argues that the State could have discovered the letter with reasonable inquiry, and then it would have been discoverable by him. Nothing in the record indicates that the State had any reason to suspect the existence of the letter, or that it failed to make reasonable inquiries of Mittler, who testified that the she did not reveal the existence of the letter earlier because she did not want to make things worse for Defendant. The State had questioned Mittler previously, and she had not revealed the existence of the letter; there is no evidence that the State could have done any more to discover it. *See State v.*

*Waelder*, 800 S.W.2d 802, 803 (Mo.App. 1990). Further, Defendant had reason to know of the existence of the letter in that he wrote it. It is difficult to see how he would be prejudiced by a failure to disclose a letter that he knew existed. Our appellate courts have held that the State cannot be faulted for the failing to disclose exculpatory evidence if the defendant had knowledge of the evidence at the time of trial. *See State v. Maxon*, 5 S.W.3d 613, 615 (Mo.App.1999). In the present case, the State promptly disclosed inculpatory evidence when the State became aware of it, and the Defendant knew of that inculpatory evidence, the letter that he wrote to Mittler, long before the trial, and we cannot fault the State under these circumstances. In addition, assuming *arguendo* that the trial court erred in admitting the letter into evidence, this would not require reversal. We review the admission of evidence for prejudice and not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Myers*, 248 S.W.3d 19, 25 (Mo.App.2008). We note that Mittler testified that Defendant had told her what to say regarding Decedent and his death, and that the general tenor of the letter matched his conversations with her. The letter was cumulative to Mittler's testimony about Defendant's conversations with her. " 'When improperly admitted evidence is merely cumulative to other properly admitted evidence, the admission of the evidence is not prejudicial.' " *Id.* (quoting *State v. Newlon*, 216 S.W.3d 180, 187 (Mo.App.2007)). Even if the letter was improperly admitted there was no prejudice. Point denied.

■ In his third point relied on, Defendant argues that the trial court plainly erred, causing manifest injustice or a miscarriage of justice, by establishing and finding Defendant's status as a prior felony offender after the submission of the case to the jury, and also in entering written sentence and judgment that reflected his status as a persistent felony offender. Defendant avers that the trial court failed to comply with the timing requirements of section 558.021.2, which deprived him of his statutory right to jury sentencing, and also that the State did not charge him as a persistent felony offender.

■ Defendant requests plain error review under Rule 30.20 on the issue of jury sentencing, conceding that it was not raised at trial. Rule 30.20 provides that this Court may, in its discretion, consider plain errors that affect substantial rights when we find that manifest injustice or a miscarriage of justice has resulted. Plain error review is a two-step process. *State v. Smallwood*, 230 S.W.3d 662, 664 (Mo. App.2007). First, this Court must determine whether plain error has occurred, that is whether the claim for review demonstrates on its face substantial grounds for believing that a manifest injustice or a miscarriage of justice has occurred. *Id.* If this Court finds plain error on the face of the claim, we have the discretion to undertake the second step: determining if the claimed error actually resulted in a manifest injustice or a miscarriage of justice. *Id.* A manifest injustice or miscarriage of justice depends upon the facts and circumstances of the particular case. *Id.* An unauthorized sentence affects substantial rights, which results in manifest injustice, thereby justifying plain error review. *State v. Morris*, 285 S.W.3d 407, 414 (Mo. App.2009).

■ The State charged Defendant as a prior felony offender. Defendant admitted at trial that he had been convicted of tampering, stealing a car, and stealing a credit device, and that the stealing convictions were felony convictions, as was the tampering conviction. He also admitted that

the stealing and tampering convictions were in 2000. However, Exhibit 62, the certified copy of Defendant's conviction for stealing a credit device, was not admitted until after the case was submitted to the jury, and it was at that point that the trial court found that he was a prior offender. In the subsequent written sentence and judgment, however, the trial court incorrectly marked the box denoting Defendant as a persistent offender.

Section 558.021.2 provides that:

> In a jury trial, the facts shall be pleaded, established and found prior to submission to the jury outside of its hearing, except the facts required by subdivision (1) of subsection 4 of section 558.016 may be established and found at a later time....

Where the State fails to present evidence before the case is submitted to the jury, there is no basis on which to sentence a defendant as a prior offender or as a persistent offender. *See State v. Emery,* 95 S.W.3d 98, 101 (Mo. banc 2003); *State v. Collins,* 290 S.W.3d 736, 744–46 (Mo.App. E.D.2009). In this instance, the necessary evidence was not introduced until after the case was submitted to the jury, and consequently the trial court had no basis on which to sentence Defendant as either a prior offender or a persistent offender.

█ However, even though the statute was not followed, Defendant must still be prejudiced for the error to be reversible. Defendant contends that he was prejudiced because this error deprived him of his statutory right to be sentenced by a jury. The situation in the present case is similar to that in *State v. Emery,* 95 S.W.3d 98 (Mo. banc 2003), where the defendant raised a similar claim on the same basis. In *Emery,* the State conceded that

it failed to offer evidence of the defendant's status as a prior and persistent offender before the case was submitted to the jury, and the defendant argued that he was wrongfully denied the chance to have the jury recommend his sentence. *Id.* at 100. The Missouri Supreme Court held the defendant waived his statutory right to a jury-recommended sentence when he permitted the judge to determine his sentence without raising his right to have the jury recommend a sentence. *Id.* at 102. It observed that if the defendant or his counsel had timely raised the issue of the failure to offer evidence of prior and persistent offender status prior to submission of the case to the jury, the State "could have realized its error and offered evidence of Emery's prior and persistent offender status[.]" *Id.* at 102–03. It held that the defendant chose to sit on his statutory right, and could not thereafter be deemed entitled to a jury-recommended sentence, stating "[h]e has waived that right." *Id.* at 103. *See also Morris,* 285 S.W.3d at 414. Similarly in the present case, Defendant sat on his statutory right and he waived it. While Defendant did not place his waiver in writing, the Missouri Supreme Court in *Emery,* 95 S.W.3d at 102–03 did not require such; it was sufficient that the defendant chose "to sit on his statutory right." *See also Morris,* 285 S.W.3d at 414; *State v. Weaver,* 178 S.W.3d 545, 548 (Mo.App.2005).

█ Defendant also argues that he was prejudiced because the trial court "committed another error" when it entered a written sentence and judgment that he is a persistent felony offender.[1] The State concedes that Defendant was only charged as a prior offender, not a persistent offender, and the record indicates that the trial court made a verbal finding that he was a

1. Under Rule 84.04, this claim of error should have been asserted as a separate point relied on, as it is distinct from the claim of error also asserted in the third point relied on.

prior offender, but marked the box for "persistent offender" on the written sentence and judgment.

The situation is similar to that in *State v. Broom*, 281 S.W.3d 353 (Mo.App.2009). In *Broom*, the defendant argued that the trial court committed plain error in finding that he was a persistent offender for several reasons, including that he had been charged as a prior offender, not a persistent offender. *Id.* at 358. In that case, defendant admitted that his claim of error had not been preserved because he did not object to the sentence at trial and did not raise the issue of the persistent offender finding in a motion for a new trial, leaving only plain error review. *Id.* He had been indicted as a prior offender, and had testified that he had a prior felony offense, but the trial court checked the box on the judgment form indicating that it had found the defendant to be a "persistent offender" and did not mark the box for "prior offender." *Id.* The State conceded in *Broom* that the finding that the defendant was a persistent offender violated the statute because he had not been indicted as a persistent offender, but rather only as a prior offender. *Id.* This Court observed that the defendant was sentenced to a term of ten years' imprisonment for robbery in the first degree, a class A felony, and ten years is the minimum sentence that can be imposed for a class A felony, whether or not the defendant is found to be a persistent offender. *Id.* at 359. We held that:

> Accordingly, defendant did not receive an extended term of imprisonment as a result of the trial court's finding that he was a persistent offender. Defendant is not entitled to reversal and remand for re-sentencing because he was not prejudiced by the trial court's persistent offender finding. Since the persistent offender finding could not result in reversible error, there are no extraordinary circumstances in this case to justi-

fy reviewing this argument as a matter of plain error. However, we will correct the judgment by changing the finding that defendant was a persistent offender to the finding that defendant was a prior offender.

*Id.* (internal citations omitted).

In the present case, Defendant was charged as a prior offender and admitted that he had prior felony convictions. As in *Broom*, the trial court marked the box for "persistent offender" and not the box for "prior offender" on the judgment. The issue is whether Defendant was prejudiced by this error. For Count I, murder in the first degree, the sentence is life imprisonment without the possibility of parole, regardless of whether or not the defendant is found to be a persistent offender. Section 565.020. Defendant did not receive an extended sentence for Count I. Count II, armed criminal action, is an unclassified felony, which is not affected by a finding that a defendant is a persistent offender. Section 558.016.7. Accordingly, Defendant did not receive an extended sentence for Count II. Count III, tampering with physical evidence, is a class D felony punishable by imprisonment for a term of years not to exceed four years. Section 558.011.1(4). Defendant was sentenced to a term of four years' imprisonment for Count III, and not to an enhanced punishment as for a class C felony, a term of imprisonment not to exceed seven years. Section 558.011.1(3); section 558.016.7(4). His punishment for Count III was not enhanced by the incorrect status of a persistent offender. Defendant was not prejudiced by the trial court's error, and we need not review further for plain error. *See id.* As in *Broom*, we correct the trial court's judgment by changing the finding that Defendant was a persistent offender to the finding that Defendant was a prior offender.

Point three is sustained in part and denied in part.

We correct the judgment and sentence to delete the finding that Defendant was a persistent offender and amend it with the finding that he was a prior offender. The judgment of the trial court is affirmed as modified.

KATHIANNE KNAUP CRANE, P.J., and NANNETTE A. BAKER, J., concur.