

# In the Missouri Court of Appeals
## Eastern District

**DIVISION THREE**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED108390 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Bryan L. Hettenbach |
| ANDREA SHAUNTE STRAUGHTER, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 27, 2021 |

## Introduction

Andrea Shaunte Straughter ("Straughter") appeals from the judgment following her jury-trial convictions on two counts each of assault in the first degree and armed criminal action. Straughter raises three points on appeal. The first two points allege the trial court abused its discretion in sustaining the State's objection to Straughter's questioning during voir dire regarding the Castle Doctrine and rejecting Straughter's proposed Castle-Doctrine jury instruction because Straughter was assaulted by the Victim through the open window of her car before Straughter shot Victim. Point Three contends the trial court plainly erred in overruling Straughter's objection to the State's inquiry into Straughter's social media video postings because the State failed to disclose the evidence before trial. Although the legislature expanded the statutory protections of the Castle Doctrine to encompass uninvited entry into vehicles, the record contains no substantial evidence supporting the application of the Castle-Doctrine instruction because Victim did not attempt to unlawfully enter Straughter's car. We therefore

deny Points One and Two. Because the State's questioning relating to Straughter's video postings did not result in manifest injustice, the trial court committed no plain error in allowing the questioning, and we deny Point Three. Accordingly, we affirm the trial court's judgment.

Factual and Procedural History

This case arises out of a domestic dispute in May 2018 between Victim and Victim's ex-boyfriend, Nicholas Ward ("Ward"). Straughter was friends with Ward and drove Ward to Victim's home. When they arrived, Ward exited the car, removed his shirt, and became loud and aggressive. Victim came out of the home carrying a gun, because she thought Ward also had a gun. Victim gave the gun to her sister ("Sister") and told her to put it in the trunk of the car. Ward and Victim argued. Victim asked Straughter why she would bring Ward over, and Straughter replied, "B-----, I don't have to explain nothing to you." Victim then punched Straughter in the face "as hard as [she] possibly could" through the open window where Straughter sat in the driver's seat of her car. The witnesses provided conflicting testimony whether Victim punched Straughter with a closed fist or slapped her. Victim did not attempt to enter the car. Straughter testified that Victim did not try to open the car door, did not attempt to reach in and grab her, did not reach in and pull on the inside handle, did not try to unlock the door, and did not claw at the door or at Straughter in an effort to gain access into the car. After striking Straughter, Victim stepped back one-to-three feet from the car and made no further movements toward the car. Straughter then retrieved a pistol and shot Victim twice and Sister once.

Straughter left the scene of the incident but later went to the police station and provided a statement. The State charged Straughter with two counts each of first-degree assault and armed criminal action. The case proceeded to trial.

2

During voir dire, Straughter questioned the venire panel on the topic of self-defense. Specifically, Straughter asked the venire panel if anyone had any reason for not believing the law permits persons to use deadly force to defend themselves. Straughter explained that Missouri law allows a person to use deadly force to defend himself from what he reasonably believes is the imminent use of deadly force against him. Straughter then began to inform the jury of the Castle Doctrine under Missouri law, and the State objected. Straughter argued that Missouri law codified the Castle Doctrine, which allows the use of deadly force in circumstances beyond that provided under the limitations of self-defense. More specifically, Straughter explained to the trial court that she intended to introduce evidence supporting the application of the Castle Doctrine, which allows the use deadly force in response to normal force when inside a vehicle. Straughter said the testimony would show that Victim's arm entered her car and struck Straughter in the face. The State countered that the Castle Doctrine did not apply to the facts in the case. The trial court sustained the State's objection and precluded any discussion of the Castle Doctrine during voir dire. The trial court noted it found no prejudice precluding Straughter from introducing the Castle Doctrine during voir dire because Straughter already had presented the issue of self-defense during voir dire.

Straughter testified in her own defense. On cross-examination, the State asked Straughter whether she had posted any Facebook Live videos prior to the trial. Straughter objected to this kind of questioning based on relevance. The trial court overruled the objection. Straughter answered that she did stream videos live on Facebook but denied discussing the trial. Straughter then initiated a bench conference in which she noted that the State had not disclosed to her during discovery any video postings. The State countered that it first learned about the existence of the videos at the same time as defense counsel, and that the videos discussed the people,

3

including the victims, coming to court for trial. When asked for the basis for her objection to the video postings, Straughter stated the video postings were not relevant and were more prejudicial than probative. Noting that Straughter had publicly posted the videos, the trial court overruled the objection. When the State continued its line of questioning, Straughter testified she posted the videos to encourage people to come to court to support her. Straughter denied posting that Victim's and Sister's appearance at court made her feel strong. On redirect examination, Straughter stated again that she posted the videos to ask people to come support her at court. Straughter testified that the State never turned over the posted videos to review with her attorney. Straughter did not raise the discovery issue relating to the State's non-production of the video postings in her motion for new trial.

During the jury instruction conference, the trial court stated it intended to give Straughter's proffered Instruction No. 15, a self-defense instruction patterned after Missouri Approved Instructions–Criminal 4th 406.06.[1] Instruction No. 15 provided in the relevant parts:

> In order for a person lawfully to use physical force in self-defense, he must reasonably believe such physical force is necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful force and he can only use physical force to the extent that he reasonably believes is necessary to defend himself.

> But a person is not permitted to use deadly force unless he reasonably believes that the use of deadly force is necessary to protect himself against death or serious physical injury.

> A person is not required to retreat before resorting to the use of physical force to defend himself if he is lawfully remaining in a vehicle. The [S]tate has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense.

In addition to the self-defense Instruction No. 15, Straughter requested the trial court give the self-defense instruction based on the Castle Doctrine patterned after MAI-CR 4th 406.10 (the

---

[1] All MAI-CR references are to MAI-CR 4th (2017), unless otherwise noted.

"Castle-Doctrine Instruction"). Straughter reasoned she was entitled to have the jury instructed on the Castle Doctrine because the evidence showed Victim used unlawful force against Straughter while Straughter was sitting in the driver's seat of her car. The Castle-Doctrine Instruction specified, in relevant part, that:

> A person who is lawfully occupying a vehicle may use physical force, including deadly force, to defend himself against another person who enters unlawfully if he reasonably believes the use of some physical force is necessary to defend himself from what he reasonably believes is the use or imminent use of unlawful physical force.
>
> . . . .
>
> As used in this instruction, a person "unlawfully enters" a vehicle when he enters such vehicle and is not licensed or privileged to do so.

Straughter maintained the evidence admitted at trial established Victim's entry into her car, which constituted an unlawful force used against Straughter. The State objected that the evidence of Victim's conduct did not support Straughter's request for the Castle-Doctrine Instruction. The trial court rejected the proposed Castle-Doctrine Instruction.

The jury found Straughter guilty on both counts of assault in the first-degree and the two associated counts of armed criminal action. The sentencing court imposed the jury-recommended sentences of ten years on the first count of first-degree assault, five years on the second count of first-degree assault, and three years on each count of the associated counts of armed criminal action, with all sentences to be served concurrently. Straughter now appeals.

## Points on Appeal

Straughter raises three points on appeal. Straughter's first two points both involve the application of the Castle Doctrine. Point One argues the trial court abused its discretion when precluding Straughter from questioning the venire panel about the Castle Doctrine because it was relevant to whether Straughter was entitled to the use of deadly force after being assaulted by

5

Victim while in her car. Point Two asserts the trial court erred in rejecting Straughter's requested Castle-Doctrine Instruction because the evidence of Victim's assault on Straughter while Straughter was seated inside her car entitled her to the instruction. Point Three alleges the trial court plainly erred in overruling her objection to the State's inquiry into Straughter's video postings because the State failed to disclose the evidence before trial.

Discussion

## I.      Points One and Two—Unlawful Entry Required for Castle Doctrine

Because Points One and Two challenge whether the trial court erred in denying Straughter the opportunity to instruct the prospective jurors and then the jury on Missouri's Castle Doctrine, we address these points together. We first discuss the claim of instructional error.

### A.      Standard of Review

We review de novo a trial court's decision whether to give a requested jury instruction. State v. Whipple, 501 S.W.3d 507, 513 (Mo. App. E.D. 2016). "The giving or failure to give an instruction or verdict form in violation of this Rule 28.02[2] or any applicable Notes On Use shall constitute error, the error's prejudicial effect to be judicially determined, provided that objection has been timely made pursuant to Rule 28.03." Rule 28.02(f); State v. Westfall, 75 S.W.3d 278, 280 (Mo. banc 2002) (noting a reviewing court will only "reverse due to instructional error if there is error in submitting an instruction and prejudice to the defendant" (internal quotation omitted)).

"Self-defense is a special negative defense pursuant to which the defendant has the burden of injecting into the evidence the issue of self-defense while the State continues to have

---

[2] All Rule references are to Mo. R. Crim. P. (2018), unless otherwise indicated.

6

the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense." State v. Isbell, 524 S.W.3d 90, 93 (Mo. App. E.D. 2017) (quoting Jones v. State, 495 S.W.3d 789, 791 (Mo. App. E.D. 2016), *overruled on other grounds by* State v. Barnett, 577 S.W.3d 124 (Mo. banc 2019)); see Section 563.031.5[3] (articulating the burden of proof for use of force in defense of persons). "Whether the evidence raises the issue of self-defense is a question of law." Isbell, 524 S.W.3d at 93 (internal quotation omitted). "A self-defense instruction shall be submitted to the jury only 'when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony.'" Id. at 94 (quoting Westfall, 75 S.W.3d at 281); State v. Young, 597 S.W.3d 214, 227 (Mo. App. W.D. 2019) (quoting State v. Bruner, 541 S.W.3d 529, 534 (Mo. banc 2018)); see also Barnett, 577 S.W.3d at 126. "'Substantial evidence' means evidence putting the matter in issue." Whipple, 501 S.W.3d at 513 (internal quotation omitted). In determining whether the trial court erred in refusing to submit an instruction on self-defense, we view the evidence in the light most favorable to the defendant, without granting "unreasonable, speculative, or forced inferences." Bruner, 541 S.W.3d at 538 (internal quotation omitted).

> B.      No Prejudicial Error in Trial Court's Refusal of Castle-Doctrine Instruction

> **1.      The Castle Doctrine**

The Missouri legislature amended the self-defense statute Section 563.031 in 2010. "The effect of these amendments was to create the so-called '[C]astle [D]octrine' and to relieve a defender of his 'duty to retreat' in certain circumstances." Whipple, 501 S.W.3d at 514 (quoting Section 563.031.1; State v. Clinch, 335 S.W.3d 579, 587 (Mo. App. W.D. 2011)). Particularly

---

[3] All Section references are to RSMo (2016), unless otherwise indicated.

relevant here, the legislature extended the right of self-defense of premises to include a person's vehicle:

> 2. A person shall not use deadly force upon another person under the circumstances specified in subsection 1 of this section **unless**:
>
>  . . . .
>
> (2) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or **vehicle** lawfully occupied by such person[.]
>
> . . . .
>
> 3. A person does not have a duty to retreat:
>
> (1) From a dwelling, residence, or **vehicle** where the person is not unlawfully entering or unlawfully remaining[.]

Section 563.031.2(2), .3(1) (emphasis added). The new statutory language "did not eliminate the requirement of a reasonable belief in the use of actual or imminent unlawful force but merely codified that the unlawful entry into a dwelling, residence, or vehicle constitutes the act of force necessary to justify deadly force." Clinch, 335 S.W.3d at 588.

The requirement of unlawful entry is crucial to a claim of self-defense under the Castle Doctrine as opposed to a claim of general self-defense. The Castle Doctrine is a codification of defense of premises, which "is essentially accelerated self-defense because it authorizes protective acts to be taken earlier than they otherwise would be authorized, that is, at the time when and place where the intruder is seeking to cross the protective barrier of the house." Perkins v. State, 77 S.W.3d 21, 24 (Mo. App. E.D. 2002) (internal quotation omitted). General self-defense and defense of premises, or Castle Doctrine, "differ in terms of time and space in that defense of premises is applicable prior to and during the intruder's entry[.]" State v. Lumpkin, 850 S.W.2d 388, 392 (Mo. App. W.D. 1993) (internal citation omitted); see also State

v. Hashman, 197 S.W.3d 119, 128 (Mo. App. W.D. 2006) (internal citation omitted) (noting general self-defense "is a defense to immediate harm and [defense of premises] is a defense to immediate unlawful entry").

Missouri law statutorily defines "unlawfully enter" as follows:

[A] person unlawfully enters in or upon premises or private property *when he or she enters such premises or private property* and is not licensed or privileged to do so.

Section 563.011(9) (emphasis added). In reviewing whether evidence shows unlawful entry, "[i]t is not sufficient solely that the defendant believed in his or her own mind that the other person was attempting to enter the premises . . . ; the belief must also be objectively reasonable." Lumpkin, 850 S.W.2d at 392 (internal citation omitted) (finding the defendant's belief that the victim was going to shoot him and then break into the house to burglarize it was unreasonable because the victim had not verbally or through his actions indicated an intention to enter the premises, but rather the evidence showed the victim did not move from the spot in which he was standing when the defendant opened the door).

### 2. Application of Castle Doctrine to Facts Presented

The record clearly showed that Straughter was seated inside the driver's seat of her car when Victim punched her. Straughter argues the predicate for instructing the jury on the Castle Doctrine was met by such evidence. However, even viewing the facts in the light most favorable to Straughter, we are not persuaded the evidence shows the requisite entry by Victim into Straughter's car at the time of the shooting to allow the submission of the requested Castle-Doctrine Instruction.

While the level of force used by Victim against Straughter is contested, whether the assault was a punch or a slap is not relevant to our holding. Our focus is on evidence relating to

9

Victim's entry or attempted entry into Straughter's car when Straughter shot Victim. Even assuming in Straughter's favor per our standard of review that Victim punched her through the open window, the record must contain evidence that Victim, either verbally or physically, indicated her intent to enter Straughter's car. See Lumpkin, 850 S.W.2d at 392. Thus, we are left with the ultimate question: did Victim's conduct "open the door" for Straughter's shooting of Victim under the Castle Doctrine?

Straughter testified that Victim did not attempt to enter the car, reach in and try to grab her, pull on the door handle, unlock or claw at the door, or in any way try to open the car door. Straughter testified that after Victim punched her, Victim immediately stepped back and made no further movements toward Straughter's vehicle. Only after the occurrence of these events did Straughter shoot Victim. Victim did not enter or attempt to enter Straughter's car when Straughter retrieved a pistol and shot her. Given this fact, the record lacks the evidence required to allow the submission of the Castle-Doctrine Instruction. See id; see also Sections 563.031.2–3, .011(9); Isbell, 524 S.W.3d at 94 (internal citation omitted); Perkins, 77 S.W.3d at 24.

Straughter suggests that the Castle Doctrine applied because Victim's hand unlawfully entered the vehicle when Victim punched Straughter. However, we are not persuaded that the facts of this case satisfy the statutory requirements of Section 563.031.2. Given the particular facts presented, we reject the notion that Victim's punch through an open vehicle window *followed by her immediate retreat* satisfies the limiting language of Section 563.031, which allows the use of deadly force against an aggressor who "unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter" for purposes of the Castle Doctrine. See Section 563.031.2(2); Young, 597 S.W.3d at 227–28; Hashman, 197 S.W.3d at 128; Lumpkin, 850 S.W.2d at 392. The accelerated self-defense of the Castle Doctrine is intended to provide

10

the defendant with "defense to immediate unlawful entry" as opposed to "defense to immediate harm[.]" Hashman, 197 S.W.3d at 128. Certainly, Straughter suffered immediate harm from being punched. And the trial court noted this fear of harm by instructing the jury on Straughter's right to self-defense by giving Instruction No. 15.

The Western District recently held that evidence of the victim's car bumping into the defendant's car did not create a reasonable inference that there had been a substantial step towards unlawful entry into the defendant's car to warrant a Castle-Doctrine jury instruction. Young, 597 S.W.3d at 227–28. In Young, the Western District noted the absence of evidence demonstrating an intent or attempt to enter the defendant's car. See id. Although the facts before us differ from those in Young, as here Victim's hand did enter Straughter's car, we find the analysis of the Western District instructive. We may not give Straughter the benefit of "unreasonable, speculative, or forced inferences." See Bruner, 541 S.W.3d at 538. We are not persuaded that Victim's temporally-limited assault and immediate retreat, accompanied by no other indicia of attempted entry, raises a reasonable inference of unlawful entry into Straughter's car that entitles Straughter to the statutory privilege of defense of premises under Section 563.031.2. See Young, 597 S.W.3d at 227–28; see also Lumpkin, 850 S.W.2d at 392 (internal citation omitted) (noting defense of premises requires an objectively reasonable belief that the other person was attempting to enter the premises).[4]

---

[4] We do not address Straughter's entitlement to the Castle-Doctrine Instruction had Straughter shot Victim as Victim was in the act of punching Straughter while seated in her car. The record before us shows that the entry made by Victim when punching Straughter through the open window was complete and Victim had retreated before the shooting in question. We clearly recognize the rights given property owners under Section 563.031. But there is no evidence that Victim, though standing outside Straughter's car, made any attempt to enter the car when Straughter shot her. As we noted above, the Castle Doctrine provides a defendant with "defense to immediate unlawful entry" as opposed to "defense to immediate harm[.]" Hashman, 197 S.W.3d at 128.

11

Straughter's claim of instructional error also fails because she cannot show she was prejudiced by not being allowed to submit the Castle-Doctrine Instruction. See Rule 28.02(f); Westfall, 75 S.W.3d at 280 (requiring a showing of prejudice to establish reversible instructional error). Straughter was permitted to instruct the jury and argue that she acted in self-defense when she shot Victim. Instruction No. 15 directed the jury that "*[a] person is not required to retreat before resorting to the use of physical force to defend himself if he is lawfully remaining in a vehicle.*" Instruction No. 15 also instructed that the State carried the burden to prove that Straughter did not act in lawful self-defense when she shot Victim. While Straughter was not entitled to raise the Castle-Doctrine defense, by no means was Straughter precluded from arguing to the jury that she acted in lawful self-defense. We further note that Missouri precedent suggests that the jury be instructed either on general self-defense *or* defense of premises—not both. See Hashman, 197 S.W.3d at 128 (internal citation omitted) (noting usual fact patterns would not likely support submission of both defense of premises and regular self-defense). Here, the trial court gave a self-defense instruction that recognized Straughter's lawful right to protect herself *while inside her car*. The fact that the jury was instructed on self-defense, although not the broader Castle Doctrine, critically weakens Straughter's allegation of prejudice. See Rule 28.02(f); Westfall, 75 S.W.3d at 280.

Because substantial evidence did not support the trial court giving the refused Castle-Doctrine Instruction in addition to or instead of self-defense Instruction No. 15, and because Straughter did not demonstrate any resulting prejudice by the trial court's refusal, the trial court did not commit reversible error. See Rule 28.02(f); Isbell, 524 S.W.3d at 93 (citing Westfall, 75 S.W.3d at 280). Point Two is denied.

###### C. No Abuse of Discretion in Denying Castle-Doctrine Questioning in Voir Dire

#### 1. Standard of Review

The purpose of voir dire is to discover bias or prejudice in prospective jurors in order to select a fair and impartial jury, to which a defendant is constitutionally entitled. State v. Celian, 613 S.W.3d 380, 385 (Mo. App. E.D. 2020) (citing State v. Clark, 981 S.W.2d 143, 146 (Mo. banc 1998) (citing U.S. CONST. amends. VI, XIV; MO. CONST. art. I, sec. 18(a))). Because the trial court has broad discretion over the nature and extent of the questions counsel may ask the venire panel, we review allegations of error in the trial court's supervision of voir dire for an abuse of discretion. Id. at 384 (internal citations omitted). "We will not gainsay the trial court's ruling on the appropriateness of a voir dire question unless it was so 'clearly against the logic of the circumstances' that it 'shock[s] the sense of justice and indicate[s] a lack of careful consideration.'" State v. Emerson, 573 S.W.3d 93, 99 (Mo. App. E.D. 2019) (quoting State v. Beckett, 540 S.W.3d 881, 886 (Mo. App. W.D. 2018)). While we review questions of law without deference to the trial court, we will not reverse a ruling under the abuse-of-discretion standard unless the defendant shows prejudice "to the extent that there is a reasonable probability that the outcome at trial would have been different had the error not been committed." Id. (quoting State v. Tramble, 383 S.W.3d 34, 37 (Mo. App. E.D. 2012)).

#### 2. No Prejudice From Exclusion of Castle Doctrine During Voir Dire

In Point Two, we held under the de novo standard of review that Straughter was not entitled to a jury instruction on the Castle Doctrine. Similarly, Point One alleges the trial court abused its discretion in denying Straughter the opportunity to question prospective jurors about the Castle Doctrine. Because the abuse-of-discretion standard requires a showing of prejudice, Point Two is dispositive. See Emerson, 573 S.W.3d at 99 (quoting Tramble, 383 S.W.3d at 37).

Specifically, because Straughter was not entitled to the Castle-Doctrine Instruction, whether or not the venire panel was exposed to the concept of the Castle Doctrine did not prejudicially impact the outcome of the selected jury's deliberations. See id.

Additionally, in sustaining the State's objection to Straughter's introduction of the Castle Doctrine during voir dire, the trial court found no prejudice because Straughter did ask the venire panel about self-defense and received responses to that line of questioning. Indeed, the trial court permitted Straughter to inquire during voir dire into the lawful use of force in self-defense while a person is inside a vehicle, and the jury was later instructed on self-defense. Therefore, we do not find the trial court's ruling was clearly against the logic of the circumstances, shocked the sense of justice, or indicated a lack of careful consideration about the critical facts necessary to discover bias or prejudice in prospective jurors and lay the groundwork for the jury's trial deliberations. See id. at 99 (citing Beckett, 540 S.W.3d at 886). Point One is denied.

## II. Point Three—No Plain Error in Facebook Video Questioning

### A. Standard of Review

The State asserts Point Three is not preserved for appellate review. At trial, Straughter's objection to the State's questioning regarding the video postings was premised on relevance and a lack of probative value. On appeal, Straughter challenges the admission of evidence relating to the video postings on the basis of a violation of the rules of the discovery. See State v. Flores, 437 S.W.3d 779, 789 (Mo. App. W.D. 2014) (noting where the grounds on appeal are different from the grounds for the defendant's objections at trial, the defendant has failed to preserve the claims for review). Straughter acknowledges she did not include her claim in Point Three in her motion for new trial. See id. at 792. Thus, Straughter's point is not preserved. See id.

Notwithstanding lack of preservation, Rule 30.20 allows us to review unpreserved claims for plain error as an exercise of discretion. See id. at 789. Straughter requests we conduct plain-error review of Point Three. We "will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." State v. Brandolese, 601 S.W.3d 519, 526 (Mo. banc 2020) (internal quotation omitted). "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." Id. (internal quotation omitted).

"[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. Plain-error review is a two-step process in which we first determine whether there has been error affecting substantial rights that is "evident, obvious, and clear[.]" State v. Johnson, 524 S.W.3d 505, 513 (Mo. banc 2017) (internal quotation omitted). Second, we determine whether the error resulted in "manifest injustice or a miscarriage of justice." Id. (internal quotation omitted). The defendant bears the burden of establishing manifest injustice. Id. (internal citation omitted). Manifest injustice "is a benchmark higher than that required for a showing of mere prejudice." State v. Deason, 240 S.W.3d 767, 775 (Mo. App. S.D. 2007) (internal quotation omitted). "To be entitled to relief under the plain[-]error rule, an appellant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights" under the particular facts and circumstances of the case. Johnson, 524 S.W.3d at 513 (internal quotation omitted). "A miscarriage of justice or manifest injustice arises from the improper admission of evidence when that evidence had a decisive effect on the jury's verdict." Deason, 240 S.W.3d at 776 (internal quotation omitted).

15

B.      No Plain Error in Cross-Examination on Defendant's Social Media Posts

Straughter maintains that the State violated the rules of discovery by failing to produce the Facebook Live video postings to the defense in advance of trial, which impeded Straughter's ability to confront the postings' content effectively. See Rule 25.03. Further, Straughter contends the evidence was irrelevant and highly prejudicial because the evidence was not probative of whether Straughter committed the charged offenses and allowed the jury to hear Straughter allegedly demeaning the victims. Straughter argues that allowing the State to question Straughter about the video postings resulted in fundamental unfairness.

Rule 25.03 places an affirmative duty on the State to timely disclose any written or recorded statements and the substance of any oral statements made by the defendant as well as any electronic communications belonging to the defendant. Rule 25.03; State v. Robinson, 298 S.W.3d 119, 124 (Mo. App. E.D. 2009). "The Missouri Supreme Court has held that the trial court's denial of a requested sanction for a violation of Rule 25.03 is an abuse of discretion only when the admission of the evidence results in fundamental unfairness to the defendant." Robinson, 298 S.W.3d at 124 (citing State v. Edwards, 116 S.W.3d 511, 534 (Mo. banc 2003)). "Fundamental unfairness occurs when the [S]tate's failure to disclose results in [a] defendant's genuine surprise and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence." Deason, 240 S.W.3d at 774 (quoting State v. Taylor, 134 S.W.3d 21, 26 (Mo. banc 2004)).

Without question, Straughter's video postings constitute "recorded statements" discoverable under Rule 25.03 and as such, were subject to production by the State to Straughter. However, given the particular facts and circumstances surrounding the video postings, we find no error, plain or otherwise, in allowing the State to question Straughter about her video

16

postings. Notably, given the timing of the posts, the State and defense counsel learned about the video postings at approximately the same time. Straughter only posted the videos shortly before and during trial, and thus the State did not fail to disclose evidence in its possession to the defense before trial. See Robinson, 298 S.W.3d at 124; Deason, 240 S.W.3d at 774. "The State is obligated to disclose evidence that it has in its possession or control, but it is impossible for the State to disclose evidence that it has not discovered." Robinson, 298 S.W.3d at 124. "The State has no duty under the Due Process Clause to disclose information that it does not have, nor does it have an obligation under Missouri's rules of discovery to disclose evidence that it does not possess." Id. (internal citation omitted). Thus, the record does not show a discovery violation suggesting "evident, obvious, and clear" error by the trial court. See Johnson, 524 S.W.3d at 513.

Further, during cross-examination, the State merely questioned Straughter about video postings and did not seek to introduce copies of the postings into evidence for the jury to review. Although Straughter testified she streamed live video to Facebook, she denied making any statement that Victim and Sister coming to court made her feel strong. Additionally, Straughter was able to address the video postings on redirect examination, in which she clarified that she had simply posted the videos to invite people to come support her at trial. Straughter does not persuasively allege how prior knowledge that the State might question her about the video postings would have impacted the manner in which the evidence was handled at trial. See Deason, 240 S.W.3d at 775 ("Where counsel is surprised by opposing evidence at trial, but deals with the evidence in precisely the same manner as if he had been fully prepared, there is no surprise and there is no effect on the trial." (internal quotation omitted)). On appeal, Straughter argues that the video postings were material pieces of evidence that the State failed to disclose,

17

yet simultaneously contends the video postings were not relevant and contained nothing indicative of Straughter's guilt or innocence of the charged offenses. We agree that the testimony at trial concerning the video postings presented no inculpatory statements. See Robinson, 298 S.W.3d at 125 (noting that even late-disclosed inculpatory statements do not always result in fundamental unfairness). Under these facts, Straughter has not demonstrated fundamental unfairness, which is determined by whether the discovery violation would have affected the outcome of the trial, nor the higher benchmark of manifest injustice affecting substantial rights. See Deason, 240 S.W.3d at 774–75 (internal citation omitted).

Straughter fails to show plain error that rises to the level of manifest injustice necessary to reverse and grant a new trial. See Johnson, 524 S.W.3d at 513; Deason, 240 S.W.3d at 775. Point Three is denied.

Conclusion

We affirm the judgment of the trial court.

_____
KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.

18